Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408 369-0752
pgore@prattattorneys.com

*Attorney for Plaintiffs*



# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

ROBERT FIGY and MARY SWEARINGEN,
for themselves and on behalf of all others
similarly situated,

Plaintiffs,

vs.

FRITO-LAY NORTH AMERICA, INC.,

Defendant.

Case No. **CV 13 3988**

**CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF**

Action Filed: August 27, 2013

Plaintiffs ROBERT FIGY and MARY SWEARINGEN ("Plaintiffs") bring this lawsuit against Defendant FRITO-LAY NORTH AMERICA, INC. ("FRITO-LAY" or "Defendant") based upon their personal knowledge as to his acts and upon information and belief as to all other matters.

## INTRODUCTION

1.      This case seeks to recover for the injuries suffered by the Plaintiffs and the Class as a direct result of the Defendant's unlawful sale of misbranded food products. Defendant's actions violate the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") and the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.* ("CLRA"). Defendant packaged and labeled its food products in violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") and the regulations adopted pursuant to that act. These violations render Defendant's food products "misbranded."

2.     Under California law, misbranded food products cannot be legally sold or possessed, have no economic value and are legally worthless. Indeed, the sale or possession of misbranded food products is a criminal act in California.

3.     By selling such illegal products to the unsuspecting Plaintiffs, the Defendant profited at the Plaintiffs' expense and unlawfully deprived Plaintiffs of the money they paid to purchase food products that were illegal to sell, possess or resell and had no economic value.

4.     The "Class Period" is August 27, 2009 to the present.

5.     "Purchased Products" are those products that were purchased by Plaintiffs during the Class Period. Plaintiffs ROBERT FIGY and MARY SWEARINGEN purchased FRITO-LAY'S ROLD GOLD STICKS PRETZELS, ROLD GOLD THINS PRETZELS and ROLD GOLD TINY TWISTS PRETZELS ("ROLD GOLD PRETZELS"). Photographs of the Purchased Product are attached as Exhibits 1-3.

6.     "Class Products" are the Purchased Products bearing the identical unlawful and illegal label statements. FRITO-LAY'S ROLD GOLD PRETZELS have illegal labels with improper nutrient content claims on products containing disqualifying levels of sodium. The Class Products are either labeled "LOW FAT" or "FAT FREE" despite containing a disqualifying amount of sodium. Because of that disqualifying level of sodium, Defendant must either 1) not make the "LOW FAT" or "FAT FREE" statement, or 2) disclose the disqualifying level of sodium immediately adjacent to the "LOW FAT" or "FAT FREE" statement. Defendant's nutrient content claims are improper because Defendant failed to include disclosure statements required by law that are designed to inform consumers of the inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has been incorporated in California's Sherman Law. Additionally, FRITO LAY'S ROLD GOLD PRETZELS are labeled "All Natural" despite the fact they contain artificial, synthetic and unnatural preservatives and ingredients, specifically "niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium bicarbonate."

## PARTIES, JURISDICTION AND VENUE

7.     Plaintiffs ROBERT FIGY and MARY SWEARINGEN are a citizens of the state of California. During the Class Period, Plaintiffs purchased, in San Francisco, California, FRITO-LAY'S ROLD GOLD PRETZELS that were unlawfully labeled "LOW FAT" or "FAT FREE" despite containing a disqualifying amount of sodium necessitating a disclosure statement not present on the label. The ROLD GOLD PRETZELS were also labeled "All Natural" despite the fact they contain artificial, synthetic and unnatural preservatives and ingredients. Plaintiffs purchased FRITO-LAY's Rold Gold Sticks Pretzels, Rold Gold Thins Pretzels and Rold Gold Tiny Twists Pretzels

(Low Fat version). Plaintiffs purchased those products regularly and during most months throughout the Class Period, purchased in excess of one hundred bags of those products during that time.

8.      Defendant FRITO-LAY is a Texas corporation with its principal place of business at 7701 Legacy Drive, Plano Texas.  FRITO-LAY manufactures, advertises, markets and sells misbranded food products to tens of thousands of consumers nationwide, including many residing in California.

9.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a Class Action in which: (1) there are over 100 members in the proposed Class; (2) members of the proposed Class have a different citizenship from Defendant; and (3) the claims of the proposed Class members exceed $5,000,000 in the aggregate.

10.     The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendant is authorized to do business in California, Defendant has sufficient minimum contacts with California, and Defendant otherwise intentionally availed itself of the markets in California through the promotion, marketing and sale of products, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

12.     FRITO-LAY'S ROLD GOLD PRETZELS, with their distinctive packaging, are available at most major supermarket chains throughout California.  The following FRITO-LAY's ROLD GOLD PRETZELS have an unlawful and misleading "LOW FAT" or "FAT FREE" claim despite containing disqualifying levels of sodium, which necessitates a disclaimer immediately adjacent to those low fat or fat free claims. Those disqualifying statements are not present on the labels of :

-      **Rold Gold Sticks Pretzels**
-      **Rold Gold Thins Pretzels**
-      **Rold Gold Tiny Twists (Low Fat) Pretzels**
-      **Rold Gold Fat Free Tiny Twists Pretzels**

13.     All of those products listed in paragraph 12, as well as FRITO-LAY'S Rold Gold Rods Pretzels state "All Natural" on the front-of-package despite the fact that each of those products contain the same artificial, synthetic and unnatural ingredients, namely "niacin, reduced iron,

thiamin mononitrate, riboflavin, folic acid and ammonium bicarbonate."

14. A true and correct copy of the Rold Gold Sticks Pretzels label is attached hereto as **Exhibit "1."**

15. A true and correct copy of the Rold Gold Thins Pretzels label is attached hereto as **Exhibit "2."**

16. A true and correct copy of the Rold Gold Tiny Twists Pretzels label is attached hereto as **Exhibit "3."** Plaintiffs purchased the Rold Gold Sticks Pretzels, Rold Gold Thins Pretzels and Rold Gold Tiny Twists Pretzels (Low Fat version) regularly, typically monthly, during the class period.

17. Throughout the Class Period, the front-of-package label for Rold Gold Sticks Pretzels, Rold Gold Thins Pretzels and Rold Gold Tiny Twists Pretzels (Low Fat version) included the statement "All Natural." The products Plaintiffs purchased included those statements.

18. Throughout the Class Period, despite the label statement that those Purchased Products were "All Natural," those Purchased Products included artificial, synthetic and unnatural ingredients "niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium nitrate."

19. Throughout the Class Period, the front-of-package label for Rold Gold Sticks Pretzels included the statement "FAT FREE."

20. The Rold Gold Sticks Pretzels Plaintiffs' purchased included the statement "FAT FREE."

21. Throughout the Class Period, Rold Gold Sticks Pretzels contained more than 480 milligrams of sodium per 50 grams.

22. Throughout the Class Period, Rold Gold Sticks Pretzels contained 875 mg of sodium per 50 g.

23. During the Class Period, Defendant sold and distributed Rold Gold Sticks Pretzels products that did not state "see nutrition information for sodium content" adjacent to the "FAT FREE" statement on the front-of-package label.

24. Throughout the Class Period, the front-of-package label for Rold Gold Thins Pretzels included the statement "LOW FAT."

25. The Rold Gold Thins Pretzels Plaintiffs purchased included the statement "LOW FAT."

26. Throughout the Class Period, Rold Gold Thins Pretzels contained more than 480 mg of sodium per 50 g.

27.    Throughout the Class Period, Rold Gold Thins Pretzels contained 875 mg of sodium per 50 g.

28.    During the Class Period, Defendant sold and distributed Rold Gold Thins Pretzels products that did not state "see nutrition information for sodium content" adjacent to the "LOW FAT" statement on the front-of-package label.

29.    Throughout the Class Period, the front-of-package label for Rold Gold Tiny Twists Pretzels included the statement "LOW FAT."

30.    The Rold Gold Thins Pretzels Plaintiffs purchased included the statement "LOW FAT."

31.    Throughout the Class Period, Rold Gold Tiny Twists Pretzels contained more than 480 mg of sodium per 50 g.

32.    Throughout the Class Period, Rold Gold Tiny Twists Pretzels contained 875 mg of sodium per 50 g.

33.    During the Class Period, Defendant sold and distributed Rold Gold Tiny Twists Pretzels products that did not state "see nutrition information for sodium content" adjacent to the "LOW FAT" statement on the front-of-package label.

34.    Throughout the Class Period, Defendant also sold Rold Gold Fat Free Tiny Twists Pretzels that had the identical failure to include the statement of the disqualifying level of sodium on the label and had the identical "All Natural" statement despite containing the same artificial, synthetic and unnatural ingredients "niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium bicarbonate." Throughout the Class Period, Defendant also sold Rold Gold Rods Pretzels that had the identical "All Natural" statement despite containing the same artificial, synthetic and unnatural ingredients "niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium bicarbonate."

35.    The Rold Gold Fat Free Tiny Twists Pretzels and Rold Gold Rods Pretzels were not purchased by Plaintiffs, but the products are included within the class as a substantially similar products. They have the identical unlawful misbranding.

36.    Like the Purchased Products, throughout the Class Period, the front-of-package label for Rold Gold Fat Free Tiny Twists Pretzels included a positive attribute statement.

37.    Specifically, the label stated "FAT FREE."

38.    The label also stated "All Natural."

39.    Throughout the Class Period, Rold Gold Fat Free Tiny Twists Pretzels contained more than 480 mg of sodium per 50 g.

40. Throughout the Class Period, Rold Gold Fat Free Tiny Twists Pretzels contained 804 milligrams of sodium per 50 g.

41. Throughout the Class Period, despite including the label statement that the product was "All Natural," Rold Gold Fat Free Tiny Twists included artificial, synthetic and unnatural ingredients "niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium bicarbonate."

42. During the Class Period, Defendant sold and distributed Rold Gold Fat Free Tiny Twists Pretzels products that did not state "see nutritional information for sodium content" adjacent to the "FAT FREE" statement on the front-of-package label.

43. Like the Purchased Products, throughout the Class Period, the front-of-package label for Rold Gold Rods Pretzels included the statement "All Natural."

44. Throughout the Class Period, despite the label statement that the product was "All Natural," those Rold Gold Rods Pretzels included artificial, synthetic and unnatural ingredients "niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium nitrate." To appeal to consumer preferences, Defendant has repeatedly made improper nutrient content claims on products containing disqualifying levels of fat, saturated fat, cholesterol or sodium. These nutrient content claims are improper because Defendant failed to include disclosure statements required by law that are designed to inform consumers of the inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has been incorporated in California's Sherman Law. 21 C.F.R. § 101.13 (h)(l) provides that:

> If a food ... contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less ... per 50 g ... then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content.

45. 21 C.F.R. § 1.21 establishes that failure to disclose material facts is a violation of the disclosure rules and is *per se* "misleading."

46. Defendant repeatedly violates these provisions on its labels which prominently states "LOW FAT" or "FAT FREE" claim on the label despite disqualifying levels of sodium that exceed the 480 milligram disclosure threshold.

47. Pursuant to 21 C.F.R. § 101.13(h), Defendant is prohibited from making the unqualified nutrient claims of "LOW FAT" or "FAT FREE" claim on its food products if its products contain fat in excess of 13 grams, saturated fat in excess of 4 grams, cholesterol in excess

of 60 milligrams, or sodium in excess of 480mg per 50 grams, unless the product also displays a disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels. These regulations are intended to ensure that consumers are not misled into the erroneous belief that products like FRITO-LAY'S ROLD GOLD PRETZELS that claim, for instance, to be low in fat or fat free, but actually has unhealthy sodium levels, is a healthy choice, because of the lack of fat.

48. Nevertheless, Defendant's products label states that this product is "LOW FAT" or "FAT FREE" without such a disclosure even though the products contain sodium in excess of 480 milligrams.

49. Based on the fat, saturated fat, cholesterol and sodium content in Defendant's (i) Rold Gold Sticks Pretzels, (ii) Rold Gold Thins Pretzels, and (iii) Rold Gold Tiny Twists Pretzels (Low Fat), pursuant to federal and California law, Defendant must include a warning statement adjacent to the "LOW FAT" or "FAT FREE" nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium. Defendant's FRITO-LAY'S ROLD GOLD PRETZELS contain sodium exceeding 800 mg per 50 g of product. This triggers a disclosure statement requirement and no such disclosure statement currently exists on these products. Therefore, Defendant's Frito-Lay's Rold Gold Pretzels are misbranded as a matter of federal and California law and cannot be sold and because of this fact have no economic value and are legally worthless.

50. Likewise, Defendant's use of the term "All Natural" on products containing unnatural ingredients is unlawful.

51. 21 U.S.C. §343 (a)(1), which California's Sherman Law incorporates into California Law, deems a food misbranded if its label is "false or misleading in any particular. food manufacturers and distributors from making false or misleading statements on labels.

52. By stating on its labels that the Purchased Products are "All Natural," while the products contain artificial, synthetic and unnatural ingredients, Defendant violates California law that incorporated the § 343 (a)'s prohibition on false and misleading label statements.

53. Plaintiffs reasonably relied on the label representation and based and justified the decision to purchase FRITO-LAY'S ROLD GOLD PRETZELS, in substantial part, on the label representation. Also, Plaintiffs reasonably relied on the fact that the FRITO-LAY'S ROLD GOLD PRETZELS were not misbranded under the Sherman Law and were therefore legal to buy and possess. Plaintiffs would not have purchased FRITO-LAY'S ROLD GOLD PRETZELS had they known it was illegal to purchase and possess the products.

54. Plaintiffs reasonably relied on this label representation when making their purchase decisions and were misled by this "LOW FAT" or "FAT FREE" representation as described below. Plaintiffs also reasonably relied on the "All Natural" label statements when making their purchase decisions and were misled by that misrepresentation. Plaintiffs would not have purchased the FRITO-LAY'S ROLD GOLD PRETZELS had they known the truth about these products, i.e. that the products failed to only make positive contributions to Plaintiffs' diet and did contain one or more nutrients like sodium at levels in the food that increased the risk of disease or health related condition that is diet related. Plaintiffs had other food alternatives that satisfied such standards and Plaintiffs also had cheaper alternatives. Reasonable consumers would have been misled in the same manner as Plaintiffs.

55. FRITO-LAY uses the terms "LOW FAT," "FAT FREE" and "All Natural" to make its products appear healthier than a product that does not contain this unlawful nutrient content claim. This illegal label is used to increase sales and to charge a premium by making a product seem healthier than it is in reality.

56. FRITO-LAY sells a number of products with identical "LOW FAT" OR "FAT FREE" label statements including:

| **FRITO-LAY Rold Gold Pretzel Products** |
|---|
| Rold Gold Sticks Pretzels – Ex.1 |
| Rold Gold Thins Pretzels – Ex. 2 |
| Rold Gold Tiny Twists Pretzels– Ex. 3 |
| Rold Gold Fat Free Pretzels Tiny Twists |

57 Each of the above listed FRITO-LAY ROLD GOLD PRETZEL products has the identical "LOW FAT" OR "FAT FREE" LABEL but contains over 480 mg of sodium per 50 g of product, without the necessary disclosure statement, "See nutrition information for sodium content".

58. FRITO-LAY also sells a number of products stating with the identical "All Natural" label statement, despite the fact that they all include artificial, synthetic and unnatural ingredients "niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium nitrate." Those FRITO-LAY products with that identical unlawful "All Natural" label statement include:

| FRITO-LAY Rold Gold "All Natural" Pretzels |
|---|
| Rold Gold Sticks Pretzels - Ex. 1 |
| Rold Gold Thins Pretzels - Ex. 2 |
| Rold Gold Tiny Twists Pretzels (Low Fat) - Ex. 3 |
| Rold Gold Fat Free Tiny Twists Pretzels |
| Rold Gold Rods Pretzels |

59.     At all times during the Class Period, the above listed FRITO-LAY ROLD GOLD PRETZEL products were misbranded by unlawfully stating "FAT FREE," "LOW FAT" and/or "All Natural."

60.     Consumers paid a premium price for products that fail to comply with mandatory labeling requirements and standards established by law such that the products are misbranded and rendered unfit for sale. These products are illegal to sell or possess. In fact, the products are worthless due to this illegality and thus the unjustified premium paid for these products equals the purchase price.

61.     Plaintiffs and the Class paid a premium price for FRITO-LAY ROLD GOLD PRETZEL products with the illegal nutrient content claim. Plaintiffs and the Class also paid a premium for FRITO-LAY ROLD GOLD PRETZEL products with the illegal "All Natural" claims. Plaintiffs and the Class have been damaged by FRITO-LAY's illegal conduct in that he purchased misbranded and worthless products that were illegal to sell or possess based on Defendant's illegal labeling of the products.

## DEFENDANT'S CONDUCT IS UNLAWFUL

62.     Plaintiffs' case is brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") and the California Legal Remedies Act, Cal. Civ. Code § 1750, et seq. Plaintiffs allege that Defendant packaged and labeled the Purchased Products and Class Products in violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetics Act, 21 U.S.C. § 301 et. seq. ("FDCA"). Purchased Products and Class Products with the identical labeling violations are "misbranded."

63.     FRITO-LAY's act of selling an illegally misbranded product violates Sherman Law § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded. The sale of a misbranded product results in an independent violation of the unlawful prong of the UCL that is separate from any labeling violation.

64.     Pursuant to Sherman Law § 11825, the sale of such a misbranded product constitutes a criminal act punishable by up to twelve months in jail. As a result, the injury to the Class arises from the Defendant illegally selling a product it misbranded, the sale of which is a criminal act. Plaintiffs and the Class have been unlawfully deprived of money because the Defendant sold them a worthless, illegal product that could not be legally sold or possessed. Due to the law's prohibition of possession of such a product, consumers have been unwittingly placed, solely and directly by FRITO-LAY's conduct, in a legal position that no reasonable consumer would choose. Consumers have thus been directly injured by the Defendant's illegal act of unlawfully selling them an illegal product. Such unlawful conduct by Defendant FRITO-LAY is actionable under California law irrespective of any reliance by consumers such as Plaintiffs.

65.     Under California law, a food product that is misbranded cannot be legally manufactured, advertised, distributed, possessed or sold. These products are illegal to possess, have no economic value and are legally worthless. Indeed, the sale or possession of misbranded food is a criminal act in California. When Plaintiffs and the Class purchased an illegally misbranded product there is causation and injury even absent reliance on the misrepresentation that misbranded the product.

## THE UCL's UNLAWFUL PRONG DOES NOT REQUIRE CONSUMER RELIANCE ON AN ILLEGAL LABEL

66.     The unlawful sale of misbranded food products that are illegal to sell or possess–standing alone without any allegations of deception by Defendant other than the implicit misrepresentation that its products are legal to sell or possess, or any review of or reliance on the particular labeling claims by Plaintiffs – gives rise to Plaintiffs' cause of action under the UCL and the CLRA. In short, Defendant's injury causing unlawful conduct is the only necessary element needed for UCL liability. All Plaintiffs need to show is that they bought an unlawful product that they would not have otherwise purchased absent the Defendant's failure to disclose the material fact that the product was unlawful to sell or possess. Therefore, Plaintiffs' claims do not sound in fraud; instead, they allege strict liability pursuant to the above cited provisions of federal law and Sherman Law.

67.     Under California law, which is identical to federal law, the sale of Defendant's products listed above are unlawful, because they are misbranded in violation of the Sherman Law.

68.     FRITO-LAY's unlawful, identical ingredient lists render these products misbranded under California law.

69.    In addition to the violations of law listed above, the Defendant has violated a number of additional California laws.

70.    Defendant's Purchased Products and Class Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on his labeling either are missing or not sufficiently conspicuous.

71.    Defendant violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

72.    Defendant violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

73.    Defendant violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

74.    Defendant's act of selling a misbranded product violates Sherman Law § 110760 (unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded). The sale of a misbranded product results in an independent violation of the unlawful prong that is separate from the labeling violations listed above. When Plaintiffs purchased Defendant's misbranded products there was causation and injury even absent reliance on the misrepresentation/omission that misbranded the product. This injury arises from the unlawful sale of an illegal product that is a crime to sell and a crime to possess. Plaintiffs were deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of possession of such a product, consumers have been unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

75.    Thus, in this case, where Defendant unlawfully sold products containing the unlawful nutrient content and/or all natural claim there is: 1) a violation of specific labeling regulations and 2) a violation of the UCL unlawful prong due to the Defendant's sale of an illegal product that is unlawful to possess.

76.    Plaintiffs would not have bought the misbranded food products if Defendant had disclosed the material fact that the misbranded food products were illegal to sell and possess. Plaintiffs were injured by the Defendant's unlawful act of selling an illegal product that was illegal to sell or possess.

## CLASS ALLEGATIONS

77.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following "Class:" All persons in the United States who, within the Class Period, purchased one or more of the following FRITO-LAY products:

*       FRITO LAY ROLD GOLD STICKS PRETZELS

*       FRITO LAY ROLD GOLD THINS PRETZELS

*       FRITO LAY ROLD GOLD TINY TWISTS PRETZELS

*       FRITO LAY ROLD GOLD FAT FREE TINY TWISTS PRETZELS

*       FRITO LAY ROLD GOLD RODS PRETZELS

78.     The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

79.     This action can be maintained as a Class Action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

80.     Numerosity: Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

81.     Common Questions Predominate: This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right of each Class member to recover. Questions of law and fact common to each Class member include, for example:

a. Whether Defendant engaged in unlawful business practices by failing to properly label its Purchased and Class Products sold to consumers;

b. Whether Defendant unlawfully sold illegal misbranded food products that were illegal to sell or possess;

c. Whether the Purchased and Class Products were misbranded as a matter of law;

d. Whether Defendant labeled and distributed food with identical unlawful "Fat Free," "Low Fat" and/or "All Natural" labels;

e. Whether Defendant violated California Bus. & Prof. Code § 17200 *et seq.*, the CLRA and the Sherman Law;

f.     Whether Plaintiffs and the Class are entitled to equitable and injunctive relief; and

g.     Whether Defendant's unlawful practices harmed Plaintiffs and the Class such that he would be entitled to restitution.

82.     Typicality:     Plaintiffs' claims are typical of the claims of the Class because Plaintiffs bought Defendant's Purchased Products during the Class Period. Defendant's unlawful actions concern the same business practices described herein irrespective of where he occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law. The injuries of each member of the Class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

83.     Adequacy:     Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiffs have retained highly competent and experienced Class action attorneys to represent his interests and those of the members of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this Class action, and Plaintiffs and his counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

84.     Superiority:     There is no plain, speedy or adequate remedy other than by maintenance of this Class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of his interests through actions to which he were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute his common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a Class action. Class treatment of common questions of law and fact would

also be superior to multiple individual actions or piecemeal litigation in that Class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

85.     The prerequisites to maintaining a Class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

86.     The prerequisites to maintaining a Class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a Class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

87.     Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a Class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Business and Professions Code § 17200, *et seq.*

### Unlawful Business Acts and Practices

88.     Plaintiffs incorporate by reference each allegation set forth above.

89.     Defendant's conduct constitutes unlawful business acts and practices.

90.     Under California law, unlawful injury causing conduct, such as Defendant's unlawful sale of an illegal product, is the only element necessary for the UCL claim. No reliance is necessary. Plaintiffs' claims are based on California law identical to the federal law.

91.     Defendant sold Purchased Products and Class Products in California and throughout the United States during the Class Period.

92.     Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

93.     Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

94.     Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

95.     Defendant sold Plaintiffs and the Class Purchased Products and Class Products that were not capable of being sold or held legally and have no economic value and which were legally worthless. Plaintiffs and the Class lost money as a direct result of Defendant's unlawful conduct.

96.     As a result of Defendant's illegal business practices, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Purchased Products and Class Products.

97.     Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and the Class.

98.     As a result of Defendant's conduct, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiffs and any money paid for Defendant's Class Products purchased by the Class.

## SECOND CAUSE OF ACTION

### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

99.     Plaintiffs incorporate by reference each allegation set forth above.

100.     This cause of action is brought pursuant to the CLRA. This cause of action does not currently seek monetary relief and is limited solely to injunctive relief. Plaintiffs intend to amend this Complaint to seek damages in accordance with the CLRA after providing Defendant's with notice pursuant to Cal. Civ. Code § 1782.

101.     At the time of any amendment seeking damages under the CLRA, Plaintiffs will demonstrate that the violations of the CLRA by Defendant was willful and oppressive thus supporting an award of punitive damages.

102.     Consequently, Plaintiffs and the Class will be entitled to actual and punitive damages against Defendant for its violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

103.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because it extends to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

104.    Defendant sold Purchased Products and Class Products in California and throughout the United States during the Class Period.

105.    Plaintiffs and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

106.    Defendant's Purchased Products and Class Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

107.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Sections 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair acts or practices in that it misrepresents the particular ingredients, characteristics, uses, benefits and quantities of the goods.

108.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair acts or practices in that it misrepresents the particular standard, quality or grade of the goods.

109.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair acts or practices in that it advertises goods with the intent not to sell the goods as advertised.

110.    By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair acts or practices in that it represents that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

111.    Plaintiffs were misled by the Defendant's failure to disclose the material fact that the misbranded food products were illegal to sell and possess. They were misled by the Defendant's implicit representation that the misbranded food products were legal to sell and possess. Plaintiffs relied on the Defendant's representation that the misbranded products were legal. Plaintiffs would not have bought the misbranded food products if the Defendant had disclosed the material fact that the misbranded food products were illegal to sell and possess. A reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product. A reasonable person would not knowingly commit a criminal act. In such a situation, classwide reliance will be presumed because the misrepresentation or omission is material. There is no impediment to establishing reliance on a classwide basis for the CLRA claim in this case because it can be established by showing that the alleged misrepresentation—that the Defendant's products

were legal—was material.

112.    Plaintiffs request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the Class will continue to suffer harm. At the present time, Plaintiffs do not seek damages pursuant to the CLRA and only seeks injunctive relief for his CLRA cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, for themselves and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendant as follows:

A.    For an order certifying this case as a national Class action and appointing Plaintiffs and their counsel to represent the Class;

B.    For an order awarding, as appropriate, restitution pursuant to the UCL to Plaintiffs and the Class; for all causes of action other than the CLRA, as Plaintiffs do not seek monetary relief under the CLRA, but intend to amend their Complaint to seek such relief;

C.    For an order requiring Defendant to immediately cease and desist from selling its Class Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.    For an order awarding attorneys' fees and costs;

F.    For an order awarding pre-and post-judgment interest; and

G.    For an order providing such further relief as this Court deems proper.

Dated: August 27, 2013

By: _Puince Gore_

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

EXHIBIT 1







found below office for each package.

# Nutrition Facts

Serving Size 1 oz. (28g/About 53 pretzels)
Servings Per Container 16

**Amount Per Serving**

| Calories 100 | Calories from Fat 0 |
|---|---|

| | % Daily Value* |
|---|---|
| **Total Fat** 0g | **0%** |
| Saturated Fat 0g | **0%** |
| Trans Fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 490mg | **20%** |
| **Potassium** 70mg | **2%** |
| **Total Carbohydrate** 23g | **8%** |
| Dietary Fiber 1g | **4%** |
| Sugars 1g | |
| **Protein** 2g | |

| | | |
|---|---|---|
| Vitamin A 0% | • | Vitamin C 0% |
| Calcium 0% | • | Iron 8% |
| Thiamin 8% | • | Riboflavin 6% |
| Niacin 6% | • | Phosphorus 2% |
| Magnesium 2% | | |

* Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:



* Percent Daily Values are based... be higher or...
diet. Your daily values
depending on your calorie needs:

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

Calories per gram:
Fat 9 • Carbohydrate 4 • Protein 4

**Ingredients:** Enriched Flour (Wheat Flour, Niacin, Reduced Iron, Thiamin Mononitrate, Riboflavin, Folic Acid), Salt, Corn Syrup, Ammonium Bicarbonate and Malt Extract.
**CONTAINS A WHEAT INGREDIENT.**

No Preservatives.

FritoLay

FRITO-LAY, INC.
PLANO, TX 75024-4099
© 2011 FRITO-LAY NORTH AMERICA, INC.
U.S. Pat. 6,203,867

Visit our website @ fritolay.com







**EXHIBIT 2**



**EXHIBIT 3**