Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
T. (408) 429-6506
F. (408 369-0752
E. pgore@prattattorneys.com

Dewitt M. Lovelace (*pro hac vice*)
LOVELACE LAW FIRM, P.A.
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL32550
T. (850) 837-6020
F. (850) 837-4093
E. dml@lovelacelaw.com

Gary M. Yarborough, Jr. (*pro hac vice*)
YARBOROUGH LAW FIRM, PLLC
845-B Highway 90
Bay St. Louis, MS 39520
T. (228) 467-5771
F. (228) 467-5774
E. ylf.garyyarborough@att.net

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT FIGY and MARY SWEARINGEN, for themselves and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> FRITO-LAY NORTH AMERICA, INC., <br><br> Defendant. | Case No. 3:13-CV-3988 <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Hearing Date: Friday, June 20, 2014 <br> Time: 10:00 a.m. <br> Judge: Hon. Samuel Conti <br><br> Action Filed: August 27, 2013 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………………I

STATEMENT OF THE ISSUES TO BE DECIDED ..........................................................................VII

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION ......................................1

I. INTRODUCTION ........................................................................................................................1

II. PLAINTIFFS' FIRST AMENDED COMPLAINT'S FACTUAL ALLEGATIONS ....................2

A. General Summary of Allegations........................................................................................2

B. Plaintiffs Reasonably Relied on Frito-Lay's "Fat Free," "Low Fat" and "All Natural"

Misbranding Statements, and Would Not Have Otherwise Purchased the Products ............................3

C. Plaintiffs Bring "Fat Free" and "Low Fat" Claims, and Plaintiffs Relied on Frito-Lay's
Misbranding Label Statements to Purchase the Products ..................................................4

D. Plaintiffs Bring "All Natural" Claims, and Plaintiffs Relied on Frito-Lay's "All Natural"
Misbranding Label Statements to Purchase the Products ..................................................5

III. STANDARD OF REVIEW ........................................................................................................6

IV. STATUTORY FRAMEWORK ....................................................................................................7

V. SUMMARY OF ARGUMENT…………………………………………………………7

VI. ARGUMENT…………………………………………………………………………7

A. Plaintiffs Properly Pleaded Viable and Plausible Claims, and Deception and Injury from
Defendant's Improper
Conduct………………………………………………………………………..7

i. Plaintiffs' Fat Free and Low Fat Claims are Plausible and Plaintiffs, Who Are Reasonable
Consumers, Were Deceived By The "Fat" Statements…………………………………10

ii. Plaintiffs' "All Natural" Claims are Plausible and Plaintiffs, Who Are Reasonable Consumers,
Were Deceived By The "All Natural" Statements……………………15

B. PLAINTIFFS' FAC COMPLIES WITH RULE 9 (B)…………………………………………..18

C. PLAINTIFFS HAVE STANDING AND SHOULD BE ALLOWED TO PURSUE

CLAIMS FOR NONPURCHASED PRODUCTS…………………………………………18

D. PLAINTIFFS PROPERLY PLEADED FOR NATIONWIDE CLASS RELIEF………………21

E. PLAINTIFFS CAN SEEK INJUNCTIVE RELIEF…………………………………………22

VII. ALTERNATIVE, MOTION TO AMEND…………………………………………………23

VIII. CONCLUSION ...................................................................................................... …23

1
2

**TABLE OF AUTHORITIES**
<u>Cases</u>

3

*American Farm Bureau v. U.S. E.P.A.*, 121 F.Supp. 2d 84 (D.D.C. 2000)………………………………11

4

*Anderson v. Jamba Juice Co.*,
   2012 WL 3642835 (N.D. Cal. Aug. 25, 2012) ........................................................……...11

5
6

*Appalachian Power Co. v. E.P.A.*,
   208 F.3d 1015 (D.C. Cir. 2000) ..................................................................................................11

7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .....................................................................................................................6

8
9

*Auer v. Robbins*,
   519 U.S. 452 (1997) ...................................................................................................................11

10

*Baas v. Dollar Tree Stores, Inc.*, 2007 U.S. Dist. LEXIS 65979 (N.D. Cal. Aug. 29, 2007)………………...18

11

*Bassiri v. Xerox Corp.*, 463 F.3d 927 (9th Cir. 2006)………………………………………………11

12

*Bates v. Un. Parcel Service*, 511 F.3d 974 (9th Cir. 2007)……………………………………………19

13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .....................................................................................................................6

14
15

*Brazil v. Dole Food Co.*, No. 12-cv-1831-LHK (N.D. Cal. Mar. 25, 2013)………………………………15

*Brazil v. Dole Food Co.*, No. 12-cv-1831-LHK (N.D. Cal. Sept. 23, 2013)………………………………21

16
17

*Brooks v. ComUnity Lending, Inc.*, 2010 U.S. Dist. LEXIS 67116 (N.D. Cal. Jul. 6, 2010)………………...18

*Brown v. Hain Celestial Group, Inc.*, 913 F.Supp. 2d 881 (N.D. Cal. 2012)………………………………19

18

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011)……………………………..19, 20

19

*Bruton v. Gerber Prods. Co.*, 2014 U.S. Dist. LEXIS 5493 (N.D. Cal. Jan. 15, 2014)……………………..21

20

*Cardenas v. NBTY, Inc.*, 870 F.Supp. 2d 984 (E.D. Cal. 2012)………………………………………20

21
22

*Chavez v. Blue Sky Natural Bev. Co.*,
   265 F.R.D. 365 (N.D. Cal., 2010) .............................................................................. ….21

23

*Chin v. General Mills Inc.*,
   No. 12-2150, 2013 WL 2420455 (D. Minn. May 31, 2013)......................................................17, 18

24
25

*Clancy v. The Bromley Tea Co.*,

   2012-cv-03003-JST, 2013 U.S. Dist. LEXIS 112722 (N.D. Cal. Aug. 9, 2013)……..........19, 20, 21

26
27

*Colucci v. Zoneperfect Nutrition Co.*,
   2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ........................................................ …6

28

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012). .....................................................................…19, 21

*Engalla v. Permanente Med. Group, Inc.*,

15 Cal. 4th 951 (1997) ........................................................................................8, 10

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998).............................................19

*Foman v. Davis*,
371 U.S. 178 (1962) ..........................................................................................23

*Forcellati v. Hyland's, Inc.*, 876 F.Supp. 2d 1155 (C.D. Cal. 2012)...........................................21

*Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30 (2005)................................................21

*Greenwood v. CompuCredit Corp.*,
2010 U.S. Dist. LEXIS 127719 (N.D. Cal. Nov. 19, 2010)........................................19

*Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 82746 (C.D. Cal. June 10, 2013)............20

*Hale v. Sharp Healthcare*,
183 Cal.App. 4th 1373 (Cal. Ct. App. 2010)........................................................15

*Henderson v. Gruma Corp.*, No. CV 10-04173 (C.D. Cal. Apr. 11, 2011).................................22, 23

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)........................................1, 8, 9, 10, 14, 16

*In re Frito Lay N. Am., Inc.*,
2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013) ........................................19

*In re Marriage of Moore*, 113 Cal. App. 3d 22 (1980)............................................................21

*In re Tobacco II*,
46 Cal. 4th 298 (Cal. App. 2009) .................................................................1, 8, 9

*Jones v. Conagra Foods, Inc.*, 2012 WL 6569393 (N.D. Cal. Dec. 17, 2012)...................................18

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002)............................................................................7

*Kane v. Chobani, Inc.*,
No. 12-CV-02425-LHK, 2014 U.S. Dist. LEXIS 22258 (N.D. Cal. Feb. 20, 2014) ..............17

*Khasin v. Hershey*,
2012 WL 5471153 (N.D. Cal. Nov. 9, 2012).........................................................6

*Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971 (N.D. Cal. Dec. 13, 2012)...........20, 22, 23

*Koh v. S.C. Johnson & Sons, Inc.*, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan 6, 2010)......................19

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ..........................................1, 8, 9, 10, 11, 14, 16, 22, 23

*Larson v. Trader Joe's Co.*,
C-11-05188 (N.D. Cal. June 14, 2012) ...............................................................23

*Martin v. Dahlberg, Inc.*, 156 F.R.D. 207 (N.D. Cal. 1994)....................................................21

*Medrazo v. Honda of N. Hollywood*,
205 Cal. App. 4th 1 (2012) ...............................................................................8

*Meyer v. Sprint Spectrum L.P.,*
    45 Cal. 4th 634 (Cal. 2009) ................................................................................................ 9

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001) .............................................................................................. 6

*Ogden v. Bumble Bee Foods, Inc.,*
    No. 5:12-cv-01828-LHK, 2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014) ............... 15, 22

*Peviani v. Hostess Brands, Inc.,* 750 F.Supp. 2d 1111 (C.D. Cal. 2010) ..............................11

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.,*
    104 Cal. App. 4th 508 (2002) ............................................................................................. 7

*People v. Wahl,* 30 Cal. App. 2d Supp. 771 (Cal. App. Dep't Super Ct. 1940) ......................14

*Pokorny v. Quixtar, Inc.,* 601 F.3d 987 (9th Cir. 2010) ..............................................21

*Public Lands v. U.S. Dep't of Agric.,*
    2012 U.S. App. LEXIS 20175 (9th Cir. 2012) .................................................................11

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741 (9th Cir. 2006) ............................11

*Ries v. Arizona Bev. USA, LLC,*
    287 F.R.D. 523 (N.D. Cal. 2012) ........................................................................... 8, 22, 23

*Rahman v. Mott's LLP,*
    No. CV 13-3482-SI, 2014 U.S. Dist. LEXIS 11767 (N.D. Cal. Jan. 29, 2014) .................... 8

*San Rafael Compania Naviera, S.A. v. Am. Smelting & Refining Co.,*
    327 F.2d 581 (9th Cir. 1964) ..............................................................................21

*Sanders v. Kennedy,*
    794 F.2d 478 (9th Cir. 1986) ............................................................................................. 6

*Saunders v. Superior Court,*
    27 Cal. App. 4th 832 (1994) .............................................................................................. 7

*Schering Corp. v. FDA,*
    51 F.3d 390 (3rd Cir. 1995) ......................................................................................... 11, 13

*Swearingen v. Yucatan Foods, L.P.,*
    No. C 13-3544-RS, 2014 U.S. Dist. LEXIS 18094 (N.D. Cal. Feb. 7, 2014) .........8, 19, 21

*Trazo v. Nestle USA, Inc.,* 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ...............19

*Vicuna v. Alexia Foods, Inc.,* 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ........................18

*Washington Mut. Bank, FA v. Superior Court,* 24 Cal. 4th 906 (2001) ..............................21

*Werdebaugh v. Blue Diamond Growers,*
    2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) ..................................15, 21

*Williams* v. *Gerber Prds, Co.,*.

552 F.3d 939 (9th Cir. 2008) .................................................................1, 6, 8, 9, 14, 16, 17, 18

*Wilson v. Frito-Lay N. Am., Inc.*,

    No. 3:12-cv-01586-SC (N.D. Cal. Apr. 1, 2013)…………………………6, 8, 10, 15, 20

*Wilson v. Frito-Lay N. Am., Inc.*,

    No. 3:12-cv-01586-SC, 2013 WL 5777920 (N.D. Cal. Oct. 24, 2013)……………………10

*Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355-JCS (N.D. Cal. Apr. 16, 2013)………..21


**Statutes, Rules and Regulations**

21 U.S.C. § 321 ...........................................................................................................12

21 U.S.C. § 343………………………………………………………………….5, 7, 11, 12, 17

21 C.F.R. § 1.21……………………………………………………………………….4, 5, 10

21 C.F.R. § 101.13(h)……………………………………………………...4, 5, 11, 12, 13, 14, 15

21 C.F.R. § 101.22…………………………………………………………………..5, 6, 17, 18

58 Fed. Reg. 2302 (Jan. 6, 1993)………………………………………………...8, 12, 13, 15, 16

64 Fed. Reg. 62746…………………………………………………………………………13, 15

California Bus. & Prof. Code § 17200………………………………………………………2, 7, 8

California Bus. & Prof. Code § 17203………………………………………………………….22

California Bus. & Prof. Code § 17500………………………………………………………….2, 7

California Civ. Code § 1750………………………………………………………………….2, 7

California Health & Saf. Code § 110660…………………………………………………5, 11, 17

California Health & Saf. Code § 110740…………………………………………………5, 8, 17

California Health & Saf. Code § 109875…………………………………………………...7

Federal Rule of Civil Procedure 8 (a)…………………………………………………..6, 18

Federal Rule of Civil Procedure 9 (b)…………………………………………………...18

Federal Rule of Civil Procedure 12 (b)(6)……………………………………………….6, 14

Federal Rule of Civil Procedure 15 (a)………………………………………………….23

Rest. 2d Torts § 538……………………………………………………………………8, 9

http://www.fda.gov/ICECI/ComplianceManuals/RegulatoryProceduresManual/ucm176870.htm....11

http://www.ftc.gov/bcp/policystmt/ad-food.shtm...................................................13, 14, 15

**Other Authorities**

1 Rubenstein, Newberg on Class Actions § 2:6 (5th ed.)…………………………………………..19

7AA Wright et al., Federal Practice and Procedure (3d 2005) § 1785.1…………………………..19

Robert A. Anthony, Interpretive Rules, Policy Statements, Guidance's, Manuals, and the Like-Should
    Federal Agencies Use Them to Bind the Public,
    41 Duke L.J. 1311, 1328-29 (1992) .................................................................................11

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether Frito-Lay has met its heavy burden under Rule 12 (b) to dismiss any of Plaintiffs' claims.

2.      Whether Plaintiffs have standing for non-purchased products which are substantially similar to the Purchased Products.

3.      Whether Plaintiffs' FAC alleges reliance and injury for its claims for Frito-Lay's improper, unlawful and misleading "Fat Free," "Low Fat" and "All Natural" label statements properly allege plausible deception, reliance and injury, particularly where, as is the case here, Frito-Lay's statements are material and misleading as a matter of law.

4.      Whether Plaintiffs' Class Definition should be determined at class certification.

5.      Whether Plaintiffs have standing to assert a national class, and whether Frito-Lay has met its burden of demonstrating that claim improper, where the claims here allege violations of federal law incorporated into state law.

6.      Whether Plaintiffs' claim for injunctive relief is proper under the teachings of *Kwikset* and applicable law.

7.      Whether Plaintiffs' alternative motion to amend should be granted to allow them to cure any deficiencies.

1

2  **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

3 **I.  INTRODUCTION**

4  "Labels matter." *Kwikset Corp. v. The Superior Court of Orange County*, 246 P.3d 877, 888 (Cal. 2011).

California law focuses on defendant's conduct. Where legislatures have outlawed labeling statements (as

5 is the case here), the label statements are material and there is a presumption of reliance on those

6 statements. *In re Tobacco II*, 46 Cal. 4th 298, 327 (Cal. 2009); *see also Kwikset Corp. v. The Superior Court of*

7 *Orange County*, 51 Cal. 4th 310, 329, 332-33 (Cal. 2011) and *See also Hinojos v. Kohl's Corp.*, 718 F.3d 1098,

8 1106-07 (9th Cir. 2013).

9  California law prohibited Frito-Lay from making the "FAT FREE," "LOW FAT" and "All

Natural" statements they made on its products. Plaintiffs allege they relied on those label statements,

10 and the impressions conveyed by them.

11  First, Frito-Lay's motion, which attacks the "reasonableness" or "plausibility" of Plaintiffs'

12 claims, ignores that reliance is presumed as a matter of law because Frito-Lay's label statements are

13 regulated. *Kwikset*, 51 Cal. 4th at 329, 332-33. Plaintiffs pleaded that they were misled by the misleading

14 label statements to believe that Frito-Lay's products were healthier than they actually are, and did not

contain deleterious health characteristics (e.g., excessive sodium) and were otherwise "All Natural."

15 Frito-Lay so misbranded its products to so mislead consumers, such as Plaintiffs.

16  Frito-Lay's *Motion to Dismiss* fails to meet its high burden under the Federal Rules. As discussed

17 above, Frito-Lay's attack on Plaintiffs' claims as "implausible" fails as a matter of law given Frito-Lay's

18 violations of food labeling laws.  Likewise, Frito-Lay's assertion that the back-of-package statement of

19 sodium content cures its front-of-package law violation ignores Ninth Circuit law. That argument has

been expressly rejected by leading Ninth Circuit authority holding that a misleading and unlawful label

20 cannot be cured by a nutrition label on the back of the product.  *See Williams v. Gerber Products Co.*, 552

21 F.3d 934, 939-40 (9th Cir. 2008). Frito-Lay otherwise submits inapposite arguments and cases in support

22 of its "plausibility" argument, all of which ignore the teachings of California law from *Kwikset*.

23  Plaintiffs relied on Frito-Lay's misbranding front-of-package label statements of fat free, low fat

24 and all natural. As a result of those illegal and misleading label statements and Plaintiffs' exposure to

those statements, they purchased Frito-Lay's products and forewent other cheaper products that did not

25 contain those illegal misbranding statements. They bought Frito-Lay products because of the misleading

26 impression that the products fit into Plaintiffs' dietary plans. At the point of those purchases, Plaintiffs

27 accrued standing to assert viable UCL, FAL and CLRA claims against Frito-Lay.

28  Frito-Lay's other arguments are aimed at dismissing Plaintiffs' claims for the two products they

did not purchase and at dismissing Plaintiffs' claims for a national class. Those arguments fail.

Unlike the related *Wilson v. Frito-Lay* case, Plaintiffs here do not seek to include "eighty-five" "snack foods." Rather, Plaintiffs simply include within their proposed class two products they did not purchase—Frito-Lay's Fat Free Tiny Twists and Rods—but Plaintiffs' complaint expressly details that those two products contain the exact misbranding statements as the three purchased products; Plaintiff's even included the sodium contents of those products to detail the violation. Plaintiffs have standing to assert claims for those products.

Likewise, Frito-Lay's argument that non-California purchases should be dismissed is premature. Analysis of the propriety of inclusion, *vel non*, of a nationwide putative class of consumers in this action is best left to class certification stage. A nationwide class is particularly proper in this case where the federal law incorporated by state statute will be uniform.

Frito-Lay, in all respects, failed to meet its heavy burden to dismiss any of Plaintiffs' claims. Plaintiffs' operative complaint is well-pleaded and not subject to dismissal on demurrer.

## II.   PLAINTIFFS' FIRST AMENDED COMPLAINT'S FACTUAL ALLEGATIONS

### A.  General Summary of Allegations.

Plaintiffs' First Amended Complaint [Dkt. 17] ("FAC") brings actions against Defendant Frito-Lay North America, Inc. ("Frito-Lay" or "Defendant") under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq., and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA") concerning Frito-Lay's misbranding of five products, namely Frito-Lay's:

1) Rold Gold Sticks Pretzels ("Sticks");

2) Rold Gold Thins Pretzels ("Thins");

3) Rold Gold Tiny Twists Pretzels ("Tiny Twists");

4) Rold Gold Fat Free Pretzels Tiny Twists ("Fat Free Tiny Twists"); and

5) Rold Gold Rods Pretzels ("Rods").

(FAC at ¶¶ 1, 6, 9-11, 60, 64, 69-79, 100-156).

Plaintiffs purchased Frito-Lay's Sticks, Thins and Tiny Twists during the class period. (FAC at ¶¶ 5 and 15). The other class products, the Fat Free Tiny Twists and Rods, are misbranded in the identical fashion as the Purchased Products. (FAC at ¶¶ 6, 9-58).

All of those products improperly contain 1) a misbranding "LOW FAT" or "FAT FREE" label statement; and/or 2) a misbranding "All Natural" label statement. (FAC ¶¶ 9-11, 16-49).  Plaintiffs' claims relate to those two categories of misbranding label statements, which apply to each of Frito-Lay's five products at issue.

Plaintiffs state that Frito-Lay uses its unlawful statements to "make its products appear healthier than a product that does not contain [the] unlawful nutrient content claim[s]." (FAC at ¶ 42). Plaintiffs allege that regulations are imposed to prohibit Frito-Lay's conduct, which misleadingly makes a product appear to be low in fat, fat free, or all natural, thus misleading consumers into the erroneous belief that it is a healthy choice, when it in fact contains sodium levels or unnatural ingredients making it unhealthy. (FAC at ¶¶ 43, 80-88).

**B.  Plaintiffs Reasonably Relied on Frito-Lay's "Fat Free," "Low Fat" and "All Natural" Misbranding Statements, and Would Not Have Otherwise Purchased The Products.**

Plaintiffs are health conscious purchasers, who were misled by Frito-Lay's misbranding label statements into purchasing those products when they otherwise would have purchased alternative products. (FAC at ¶¶ 80-88). Plaintiffs were exposed to and read Frito-Lay's "LOW FAT," "FAT FREE" and "All Natural" label statements, and those statements gave Plaintiffs the reasonable false impression that the foods "made only positive contributions to a diet, and did not contain any nutrients at levels that raised the risk of diet-related disease or health related condition, and/or did not contain artificial, synthetic, or unnatural ingredients." (FAC at ¶¶ 82-88). Plaintiffs relied on Frito-Lay's label statements and justified their purchase in substantial part on those misbranding statements. (FAC at ¶ 83). Those label statements were false and misleading, and misled Plaintiffs and other purchasers to purchase Frito-Lay's products. (FAC at ¶¶81-88).

Plaintiffs purchased Frito-Lay's products based on those label statements, and they would not have purchased those products had they known the true nature of the products, specifically that the products contained deleterious amounts of sodium and contained unnatural, synthetic ingredients. (FAC at ¶¶ 46-49, 61-68, 80-88, 107-108, 116-119, 123-126, 130-134, and 138-142).

In addition to alleging its reliance on all of Frito-Lay's misbranding statements, generally, and detailing how the statements impacted Plaintiffs' decision to purchase Frito-Lay's products, Plaintiffs also explain in detail how each of the particular statements led to their purchases and reliance.

First, Plaintiffs alleged to have reasonably relied on Frito-Lay's misleading, unlawful "LOW FAT" and "FAT FREE" label statements. Plaintiffs allege they relied on those statements and justified their decision to purchase the products based in substantial part on those "LOW FAT" or "FAT FREE" label statements. (FAC at ¶ 46). Plaintiffs allege that those misbranding statements are material, and California law corroborates this allegation. (FAC ¶ 47).  Plaintiffs were misled by the representation made by Frito-Lay, and would have purchased other food alternatives that satisfy the standards they expected with those alternatives being cheaper.  (FAC ¶ 49).  Defendant's unlawful "FAT FREE" or "LOW FAT" statements led to Plaintiffs' impression that products provided only positive contributions to the diet, when in fact, they had sodium levels that raise the risk of diet-related disease or health-

related conditions.  (FAC ¶¶ 82-83).  Plaintiffs relied on Frito-Lay's misstatements and misbrandings, and as a result thereof purchased Frito-Lay's products. (FAC ¶¶ 44-88).

Likewise, Plaintiffs relied on Frito-Lay's unlawful, misleading, and misbranding "All Natural" statement.  Plaintiffs substantially relied on that statement in their purchase decision, and that false statement made Frito-Lay's product appear healthier than it actually was and natural when it was not. (FAC ¶ 61-88).  Plaintiffs were misled by the false, misleading statements, and they would not have purchased Frito-Lay's products had they known that the ingredients were not "All Natural."  (FAC ¶ 66).  Plaintiffs had other food alternatives to satisfy their standards, and those alternatives were cheaper. (FAC ¶ 66).  Reasonable consumers would have been misled and have been misled in the same manner. Id.

Simply, Plaintiffs were misled into purchasing Frito-Lay's products because of the "LOW FAT," "FAT FREE" and "All Natural" statements.  Plaintiffs had cheaper alternatives, and Frito-Lay gave the reasonable impression that their products contain only positive and natural contributions to the Plaintiffs' diets. (FAC ¶¶ 81-88).  Plaintiffs would not have purchased the Defendant's products if not for those misbranding statements. (FAC ¶¶ 45-49, 61-66, 81-88).

### C. Plaintiff Brings "Fat Free" and "Low Fat" Claims, and Plaintiffs Relied on Frito-Lay's Misbranding Label Statements to Purchase the Products.

First, Plaintiffs allege viable claims for Frito-Lay's misbranding its Sticks, Thins, Tiny Twists and Fat Free Tiny Twists with front-of-package label statements "LOW FAT" or "FAT FREE." (FAC at ¶¶ 1, 6, 9, 10, 16-49). Plaintiffs allege—and California law concurs with those allegations—that Frito-Lay's use of "LOW FAT" and "FAT FREE" on those products is unlawful, misleading and misbrands those products because 1) each of those products contains more than 480 milligrams of sodium per 50 grams of product and 2) the labels do not contain a label "statement disclosing that the [sodium] exceeding the specified level" through a statement of "See nutrition information for _____ content' with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., 'See nutrition information for [sodium] content.'" (Id.; see also specifically 21 C.F.R. § 101.13 (h)(1).).

The applicable law prohibited Frito-Lay from making those "LOW FAT" and "FAT FREE" given the sodium content; the law also expressly provides that such a failure of disclosure makes the product misleading *per se.* 21 C.F.R. § 101.13 (h)(1) and 21 C.F.R. § 1.21; see FAC at ¶¶ 39-40.

21 C.F.R. § 101.13 (h)(l) provides that:

If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less … per 50 g … then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank filled

in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content.

(FAC at ¶ 39). 21 C.F.R. § 1.21 provides that such improper statements "shall be deemed to be misleading."

Plaintiffs allege that Frito-Lay's label statements—and Frito-Lay's label statements actually do—violate 21 C.F.R. § 101.13 (h)(1).

- Frito-Lay's Sticks violate that regulation because the front-of-package label states "FAT FREE," yet does not contain the "disclosing" sodium statement, despite the fact that it contains more than 480 milligrams of sodium per 50 grams. (FAC at ¶¶ 17-20). Specifically, it contains 875 milligrams of sodium per 50 grams. (FAC at ¶19).

- Frito-Lay's Thins violate that regulation because the front-of-package label states "LOW FAT," yet does not contain the "disclosing" sodium statement, despite the fact that it contains more than 480 milligrams of sodium per 50 grams. (FAC at ¶¶ 22-26). Specifically, it contains 875 milligrams of sodium per 50 grams. (FAC at ¶25).

- Frito-Lay's Tiny Twists violate that regulation because the front-of-package label states "LOW FAT," yet does not contain the "disclosing" sodium statement, despite the fact that it contains more than 480 milligrams of sodium per 50 grams. (FAC at ¶¶ 28-32). Specifically, it contains 875 milligrams of sodium per 50 grams. (FAC at ¶31).

- Frito-Lay's Fat Free Tiny Twists violate that regulation because the front-of-package label states "FAT FREE," yet does not contain the "disclosing" sodium statement, despite the fact that it contains more than 480 milligrams of sodium per 50 grams. (FAC at ¶¶ 33-36). Specifically, it contains 804 milligrams of sodium per 50 grams. (FAC at ¶35).

**D. Plaintiffs Bring "All Natural" Claims, and Plaintiffs Relied on Frito-Lay's "All Natural" Misbranding Label Statements to Purchase the Products.**

Plaintiffs also allege viable claims for Frito-Lay's misbranding of all five products at issue with the front-of-package label statement "All Natural." (FAC at ¶¶ 6, 1, 11, 16-37, 50-68). Plaintiffs allege—and California law concurs with those allegations—that Frito-Lay's use of "All Natural" on the five products is unlawful, misleading and misbrands those products because they contain "artificial, synthetic and unnatural ingredients, namely 'niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium bicarbonate.'" (FAC at ¶¶ 21, 27, 37, 50-68; see also specifically 21 C.F.R. § 343 (a)(1), 21 U.S.C. § 343 (a), and 21 C.F.R. § 101.22; see also Cal. Health & Saf. Code §§ 110660 and 110740).

The applicable law prohibited Frito-Lay from making those "All Natural" label statements, because the products contain unnatural, artificial and synthetic ingredients. (FAC ¶¶ 59-68. 21 C.F.R. § 101.22; California Health and Safety Code § 110740). The FDA has repeatedly stated that the term

"Natural" cannot be used in connection with added color or synthetic artificial flavors, which is provided in 21 C.F.R. § 101.22. (FAC ¶ 62). The FDA has sent numerous warning letters concerning this issue, stating that "Natural" or "All Natural" cannot be used when products contain unnatural, synthetic, or artificial ingredients. (FAC ¶ 65; see also Exhibits 4-6).  Each of Frito-Lay's five products complained of contain artificial, unnatural, and synthetic ingredients including niacin, reduce iron, thiamine mononitrate, riboflavin, folic acid and ammonium bicarbonate." (FAC ¶¶ 11, 21, 27, 37, 50-53, 63).

## III.    STANDARD OF REVIEW

Frito-Lay argues that Plaintiffs' claims fail as a matter of law, being insufficient or implausible. A motion to dismiss under Rule 12 (b)(6) challenges the legal sufficiency of the claims alleged. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering such a motion, the court must construe the pleading in the light most favorable to the non-moving party and all material allegations in it are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). A complaint need only provide "a 'short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).Claims survive if they offer a reasonable inference of liability. *Id.*

For claims under the UCL, FAL and CLRA, the likelihood of deception has been judged by this Court to be subject to the "reasonable consumer" test. *See Wilson v. Frito-Lay North America ("Wilson I")*, No. 3:12-cv-01586-SC, at 10-11 (N.D. Cal. April 1, 2013), *citing Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-40 (9th Cir. 2008); *Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2012 WL 673800, at *7 (N.D. Cal. Dec. 28, 2012).  Although Plaintiffs' claims have been held by this Court (in the related *Wilson* cause) to be subject to the "reasonable consumer" standard, this Court, like many others, has properly recognized that this issue is one of fact not appropriately decided in the context of a 12(b)(6) motion.  *Colucci*, 2012 WL 6737800, at *7.  The Court's approach to this issue, as stated in *Colucci*, is absolutely correct. Questions concerning the reasonableness of the consumer action are not suitable for a decision at the motion to dismiss stage. *See Khasin v. Hershey*, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012) ("The Court rejects this argument simply because the issues Defendant raises ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is beyond the scope of this Rule 12(b)(6) motion.").

## IV.    STATUTORY FRAMEWORK

The UCL prohibits three types of wrongful business practices: any (1) unlawful, (2) unfair, or (3) fraudulent business practice or act. "[I]n essence, an action based on Business and Professions Code § 17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002). The violation of almost any federal, state, or local law, i.e., the Sherman Law, may serve as the basis for a UCL claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. "'Any violation of the false advertising law necessarily violates' the UCL." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002).  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Bus. & Prof. Code § 1750.

Operative to Plaintiffs' claims is the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §301, *et seq.*, as amended by the NLEA, 21 U.S.C. § 343 (r), *et seq.* Plaintiffs' claims are based on California's Food, Drug, and Cosmetic Act ("Sherman Act"), California Health & Safety Code § 109875, *et seq.*, which adopts the FDCA and makes them the food regulations of California.

## V.    SUMMARY OF ARGUMENT

Frito-Lay's motion, which seeks to dismiss Plaintiffs' claims as "implausible" fails as a matter of law. Because the "LOW FAT," "FAT FREE" and "All Natural" claims are material as a matter of law, they are as a matter of law statements upon which a reasonable consumer would rely. Plaintiffs also have standing to pursue class claims for the non-purchased products, which—as Plaintiffs' FAC details—are misbranded in the identical fashion as the purchased products. Plaintiffs likewise have standing to assert a national class and to seek injunctive relief.

## VI.    ARGUMENT

### A.  Plaintiffs Properly Pleaded Viable and Plausible Claims, and Deception and Injury from Defendant's Improper Conduct.

Frito-Lay's argument that Plaintiffs' claims are implausible and their pleadings insufficient ignores that Frito-Lay's misbranding statements makes them material as a matter of law, and that, hence, reliance by consumers is presumed. Plaintiffs detailed their reliance on Frito-Lay's misbranding "FAT FREE," "LOW FAT" and "All Natural" statements and those claims are not here subject to dismissal on demurrer.

While Plaintiffs are aware of this Court's holding in *Wilson I* that the "reasonable consumer" test applies to even the UCL unlawful prong claim, Plaintiffs respectfully submit that test does not apply to claims brought under the "unlawful" prong of the UCL. *Swearingen v. Yucatan Foods, L.P.*, No. C 13-3544

RS, 2014 U.S. Dist. LEXIS 18094 at *23-24 (N.D. Cal. Feb. 7, 2014); *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 U.S. Dist. LEXIS 11767 at*23 (N.D. Cal. Jan. 29, 2014).[1]

And with respect to those claims to which it does apply, the Ninth Circuit has said that it is a "rare situation" where granting a motion to dismiss claims under the UCL is appropriate. *Williams*, 552 F.3d at 939.

Frito-Lay's argument for dismissal on "plausibility" ignores that Frito-Lay's placement of "FAT FREE" and "LOW FAT" without the adjacent "See Nutrition Panel for Sodium Content" is specifically proscribed by statute (*see* 21 C.F.R. § 101.13 (h)(1)), and a "legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos*, 718 F.3d at 1107; *see also*, *Kwikset*, 51 Cal. 4th at 333.

Likewise, Frito-Lay's argument dismissal on "plausibility" of the "All Natural" claim on the products containing "artificial, unnatural and synthetic" ingredients suffers the same fatal flaw, since it too is proscribed by statute. Defendant's misrepresentation is material as a matter of law. *See Wilson I*, No. 3:12-cv-01586-SC, at 23:10-26:5 (N.D. Cal. Apr. 1, 2013); *see* 21 C.F.R. § 101.22; *see also* Cal. Health & Saf. Code § 1107740; *see also* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993) (explaining that use of the term "natural" is untruthful and misleading when a product contains artificial or synthetic ingredients).

Frito-Lay's arguments for dismissal on plausibility and the reasonable consumer standard, thus, are fatally flawed and fail.

Under California law, "[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question'...." *Kwikset*, 51 Cal. 4th at 332-333 (quoting *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 977 (1997) (quoting Rest.2d Torts, § 538, subd. (2)(a)). In the alternative, it may also be material if "the maker of the representation knows or has reason to know that its recipient regards or is

---

[1] While Plaintiffs is aware of your Honor's rulings on the "unlawful prong" and opinion that it still requires reliance (e.g, concerning Frito-Lay's first argument seeking to dismiss a plain "unlawful" "misbranding" claim), Plaintiffs here preserves its position that having asserted a UCL unlawful claim, no reliance is required and the "reasonable consumer" test is inapplicable to a UCL claim. Plaintiffs allege that Defendant violated the Sherman Law by utilizing the unlawful and misleading "FAT FREE," "LOW FAT" and "All Natural" statements. Those acts are deemed illegal under California law and California law provides criminal penalties for sale or possession of such goods.
  California courts have specifically held that actual reliance by plaintiffs or the class members on the packaging or labeling that is allegedly unlawful is not a necessary element to prevail under the UCL's unlawful prong. In *In re Tobacco II Cases*, 46 Cal.4th at 325, n.17, the California Supreme Court explained that while actual reliance is required in a UCL action "based on a fraud theory involving false advertising and misrepresentations to consumers," the "UCL defines 'unfair competition' as 'includ[ing] any unlawful, unfair or fraudulent business act or practice ... ' (§ 17200)" and "[t]here are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application." One such "unfair business practice," which does not require a showing of reliance, is where a defendant sells a product that is illegal to sell because some aspect of the product does not comply with state law. See e.g., *Medrazo*, 205 Cal. App. 4th 1, at 12; *see also Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 537-38 (N.D. Cal. 2012).

likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." *Id.* at 333 (quoting Rest.2d Torts, § 538, subd. (2)(b)).

A "presumption, or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material. *In re Tobacco II Cases*, 46 Cal. 4th at 327. Whether a business practice is deceptive will usually be a question of fact not appropriate for a decision on motion. *Williams*, 552 F.3d at 939.

Plaintiffs plead facts sufficient to meet the standing thresholds of the UCL, FAL and CLRA, and their reliance was reasonable. The California Supreme Court and Ninth Circuit Court of Appeals have held that standing is conferred for UCL and FAL claims where there is a misrepresentation, the consumer purchased the product in reliance on the misrepresentation, and Plaintiffs' would not have absent the misrepresentation. *Hinojos.*, 718 F.3d 1098, 1104 and 1109. Likewise, CLRA standing exists for those suffering loss "as a result of" a violation, with standing existing when one is misled by deceptive marketing practices. *Kwikset*, 51 Cal. 4th at 326 (citing *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (Cal. 2009); *see also Hinojos*, 718 F.3d at 1107-08. The UCL requires "economic injury," which can be shown in "innumerable ways" including paying more than one otherwise would have. *Id.*, 51 Cal. 4th at 323 and 328-29.

Plaintiffs are not required to demonstrate that the challenged misbranding label statements were the sole or even the decisive cause of the injury-producing conduct, but just an immediate cause. *Kwikset*, 51 Cal.4th at 326-27. Plaintiffs here, however, allege they were the substantial cause of Plaintiffs' purchases and that Plaintiffs would not have made those purchases had they not been misled by Frito-Lay's false conveyance that the products made only positive contributions to Plaintiffs' diet, were all natural and otherwise fit into Plaintiffs' dietary regime. (FAC at ¶¶ 44-49, 61-69 and 80-88). Frito-Lay's arguments for dismissal based on "implausibility" and supposed insufficient allegations of deception, thus, fail as a matter of law. Plaintiffs, however, *infra* further refute each of Frito-Lay's arguments concerning the failure to provide a sodium disclosure and concerning an improper "All Natural" statement.

Frito-Lay's argument that Plaintiffs' reliance was "unreasonable" or "implausible" fails as a matter of law. The California Supreme Court in *Kwikset* detailed this analysis. In *Kwikset*, the Court held that the "Legislature has recognized the materiality of this representation by specifically outlawing deceptive and fraudulent 'Made in America' representations." *Kwikset*, 51 Cal. App. 4th at 329. The Court noted that the Legislature's intent was to "protect consumers from being misled when purchasing products in the belief that they [were] advancing the interests of the United States and its industries and workers." *Id.* Frito-Lay's misbranding label statements are regulated by California law and are therefore undeniably material as a matter of law. *See also Hinojos*, 718 F.3d at 1106-07.

The California Legislature has made clear that label statements concerning the purported health benefits of and claims—such as relates to "low fat," "fat free" or "natural" claims—are material to consumers. The Legislature has made the determination that reasonable people could and would attach importance to and be misled by label statements concerning fat content made by Frito-Lay. As the plaintiff in *Kwikset* was misled by the statement "Made in the USA," Plaintiffs here were substantially motivated by Frito-Lay's label statements, and lack of a disqualifying statement by Frito-Lay concerning the sodium content. *See Kwikset*, 51 Cal. 4th at 332-33.

Thus, because the legislature deemed Frito-Lay's statements "material" as a matter of law (*See Kwikset*, 51 Cal. 4th at 330-33), those label statements are *by definition* statements to which "a reasonable man would attach importance to in its existence or nonexistence in determining his choice or action in the transaction in question." *Id.* (citing *Engalla v. Permanente, Medical Group, Inc.*, 15 Cal. 4th 951, 977 (Cal. 1997). As such, Plaintiffs' reliance here is that of a reasonable person, as a matter of law.

### i. Plaintiffs' Fat Free and Low Fat Claims are Plausible and Plaintiffs, Who are Reasonable Consumers, Were Deceived by the "FAT" Statements.

Concerning Plaintiffs' claims for Frito-Lay's "FAT FREE" and "LOW FAT" statements in the absence of a sodium disclosure, Frito-Lay argues: 1) Plaintiffs' reliance on those statements is implausible because of the nutrition panel; 2) the packaging allowed Plaintiffs' to "see that there is salt on the pretzels;" and 3) the sodium levels of Frito-Lay's products did not contradict Plaintiffs' reasonable expectations.

Frito-Lay disingenuously argues that no reasonable consumer could have been misled by Frito-Lay's utilization of its "FAT FREE" or "LOW FAT" claims on the front-of-package label without making the front-of-package disclosure statements about fat mandated by law (21 C.F.R. § 101.13(h)) to apprise consumers that the product contained deleterious sodium levels the FDA deemed sufficient to increase the risk of a diet related disease or condition when such a failure misbrands the products rendering them illegal to sell, buy or possess.

Neither the FDA nor California finds a failure to follow the disclosure rule to be insignificant or trivial. The rule is clear: where a "fat free" or "low fat" claim is made, the manufacturer is required to disclose the nutrient (e.g., sodium) which exceeds the specified level.

Notably, while Frito-Lay asserts that it cites the related *Wilson v. Frito-Lay* case "passim" (see Frito-Lay's Brief at v, lines 11-12), Frito-Lay ignores the fact that this Court—in that case—twice held the plaintiffs' reliance on the equivalent 21 C.F.R. § 101.13 (h) violation for exceeding sodium content plausible and viable. *Wilson v. Frito-Lay N. Am., Inc. I ("Wilson I")*, No. 3:12-cv-01586-SC, Dkt. 46, at 9-12 and 26:19-27:28 (N.D. Cal. Apr. 1, 2013); *see also Wilson v. Frito-Lay N. Am., Inc. ("Wilson II")*, No. 3:12-cv-01586-SC, 2013 WL 5777920 (N.D. Cal. Oct. 24, 2013).

Frito-Lay's label is unlawful and misleading and the consequences are not trivial. The sodium level of the products at issue far exceed the disqualifying level. The FDA has issued numerous warning letters informing food companies their products were misbranded and labels thus misleading because of similar 21 C.F.R. § 101.13 (h) violations. Though Frito-Lay asserts that Plaintiffs' complaints concern merely "minor" violations of FDA regulations, the FDA and California's legislature, to the contrary, deem those violations material and misleading. *Kwikset*, 51 Cal.4th at 326-27; *see also* 21 C.F.R. § 1.21, U.S.C. § 343 (a)(1) and Cal. Health & Saf. Code § 110660. In fact, the types of violations at issue here resulted in numerous FDA warning letters which the FDA only issues for violations of "regulatory significance" where the violation was a significant violation.

http://www.fda.gov/ICECI/ComplianceManuals/RegulatoryProceduresManual/ucm176870.htm.

The FDA's has interpreted its own regulations (in this case 21 C.F.R. § 101.13(h)) and concluded that Frito-Lay's "FAT FREE" and "LOW FAT" claims violate those regulations, are misleading and render products misbranded. The FDA's determination is "controlling" and must be given deference.[2]

An agency's interpretation of its own regulations is entitled to deference even if informal and even if non-binding or lacking the force of law. These interpretations not only include agency letters, compliance guides and agency guidance, but also the FDA's published responses to commentators when enacting the regulations at issue. *See e.g., Schering Corp. v. FDA*, 51 F.3d 390, 399-400 (3rd Cir. 1995) (deferring to FDAs stated disagreement with commentators regarding appropriate measurement of bioequivalence).[34]

Notwithstanding the fact that its "FAT FREE" and "LOW FAT" labeling claims are

---

[2] Thus the Ninth Circuit has stated: "[w]e give wide deference to an agency's reasonable interpretation of its own regulation." *Public Lands for the People, Inc. v. United States Dep't of Agric.*, 2012 U.S. App. LEXIS 20175 (9th Cir. 2012).  "[W]here an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'" *Id.* (quoting *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006).

[3] Courts have regularly taken judicial notice of FDA warning letters and guidance documents.  *See Anderson v. Jamba Juice Co.*, 2012 WL 3642835, at *2 (N.D. Cal. Aug. 25, 2012); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (courts will take judicial notice of public record.).  *See also, Von Koenig*, 713 F. Supp. 2d at 1073 (court took judicial notice of FDA warning letters, available on FDA website as matters of public record, in considering motion to dismiss); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1116 (C.D. Cal. 2010) (court took judicial notice of FDA Food Labeling Guide); *Am. Farm Bureau v. U.S. E.P.A.*, 121 F. Supp. 2d 84, 106 (D.D.C. 2000) (Judicial notice taken of federal agency policies printed in Federal Register).

[4] Compliance Guidance and other agency pronouncements can, "as a practical matter, have binding effect"  even if classified as non-binding. *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1021 (D.C. Cir. 2000).  In Appalachian Power, the Court of Appeals found and held that EPA guidance documents were final agency documents subject to judicial review.  The Court held that where an agency "acts as if a document issued at headquarters is controlling in the field, if it treats the document in the same manner as it treats a legislative rule, if it bases enforcement actions on the policies and interpretations formulated in the document… then the agency's document is for all practical purposes 'binding.'" *Id.* (citing and quoting Robert A. Anthony, Interpretive Rules, Policy Statements, Guidance's, Manuals, and the Like-Should Federal Agencies Use Them to Bind the Public?, 41 Duke L.J. 1311, 1328-29 (1992)).

indisputably in violation of California law, Frito-Lay argues that it is not plausible that anyone could have been misled by its failure. This attempt is unavailing for a number of reasons.

First, as 21 C.F.R. § 1.21 which has been adopted by California provides that:

> [l]abeling of a food … shall be deemed to be misleading if it fails to reveal facts that are 1) Material in light of other representations made or suggested by statement, word, design, device or any combination thereof; or (2) Material with respect to consequences which may result from use of the article under: (i) The conditions prescribed in such labeling or (ii) such conditions of use as are customary or usual.

The FDA's published comments when enacting the final nutrient content claim disclosure rule found the failure to make the mandatory disclosures when making a nutrient content claim like "FAT FREE" or "LOW FAT" would be "misleading:"

> FDA has the authority to issue this final rule regarding nutrient content claims under sections 201(n) (21 U.S.C. 321(n)), 403(a), 403(r), and 701(a) of the act. These sections authorize the agency to adopt regulations that prohibit labeling that: (1) Is false or misleading in that it fails to reveal facts that are material in light of the representations that are made with respect to consequences that may result from use of the food, or (2) uses terms to characterize the level of any nutrient in a food that has not been defined by regulation by FDA. 58 F.R. 2302, 2303.

> Section 403(r)(2)(B)(ii) of the act states that if a food that bears a nutrient content claim "contains a nutrient at a level which increases to persons in the general population the risk of a disease or health-related condition which is diet related, taking into account the significance of the food in the total daily diet, the required referral statement shall also identify such nutrient," i.e., a disclosure referral statement. FDA referred to this level as the "disclosure level" in the general principles proposal (56 FR 60425). In proposed § 101.13(h), FDA defined such levels for fat, saturated fat, cholesterol, and sodium, based upon an approach that considered dietary recommendations for these nutrients, the number of servings of food in a day, and available information on food composition. The proposed provision set out the required contents of the referral statement that would result. 58 F.R. 2302, 2307.

> Under sections 201(n), 403(a), and 701(a) of the act, the agency could require the identification of nutrients that are present at levels that increase the risk of a disease or health-related condition in the absence of a claim. However, in the absence of a nutrient content claim, there would be no basis to conclude that consumption of the food would receive any particular emphasis as part of the total daily diet, and thus there would be no particular basis for concern, and hence for a warning, about the levels of fat, saturated fat, cholesterol, or sodium in the food. **Only when the significance of the food in the total daily diet is highlighted, as it is when a nutrient content claim is made, does the level of these other nutrients become material not only for purposes of section 403(r)(2)(B)(ii) of the act but also for sections 201(n) and 403(a) of the act. 58 F.R. 2302, 2307.**

> The disclosure statement is not intended to serve as a primary basis for making a purchase decision. **However, if a nutrient content claim is made, the label must provide the consumer with the facts that bear on the advantages asserted by the claim and with sufficient information to understand how the product fits into a total dietary regime.** 58 F.R. 2302, 2307-08. (emphasis added)

---

These interpretations include the FDA's published responses to commentators when enacting the regulations at issue. *See e.g., Schering*, 51 F.3d at 399-400. The FDA has maintained this view in subsequent comments on the rules:

> In addition, under section 403(r)(2)(A)(vi) of the act, the Secretary by regulation may prohibit a claim about the level of a nutrient ***because it is misleading in light of the level of another nutrient in the food***. Section 403(r)(2)(B) of the act requires that the labeling of any food bearing a nutrient content claim that contains a nutrient at a level that increases to persons in the general population the risk of a disease or health-related condition that is diet related must contain, prominently and in immediate proximity to such nutrient content claim, a disclosure statement specified by that section of the act. 64 F.R. 62746, 62748. (emphasis added).

Frito-Lay cannot avoid the fact that it failed to make the required disclosure on the front of its packaging. The disclosure requirements as required by 21 C.F.R. § 101.13 (h) were imposed to prevent consumers from being misled as to the overall nutritional profile of foods by highlighting of healthier aspects while less healthy aspects were concealed. Plaintiffs were deceived in this exact manner here, being misled into thinking the product was healthier by the front-of-package "FAT FREE" and "LOW FAT" statements. (FAC at ¶¶ 40-49, 81-88). The selective presentation by Frito-Lay of "fat free" and "low fat" on the front-of-package while failing to make the required front-of-package disclosures about the deleterious sodium content is the exact practice regarding which the FDA expressed concern about the potential to mislead consumers by only presenting the positive attributes of the food. Given Frito-Lay's proclivity to make those "FAT FREE" and "LOW FAT" claims, it was required under identical California and federal law to follow the disclosure of 21 C.F.R. § 101.13(h) and notify consumers on the front-of-package label that its products contained levels of sodium the FDA deemed sufficient to increase the risk of a diet related disease or condition. Failing to do so is misleading. As the FTC noted in its food advertising enforcement guide:

> As mandated by the NLEA, FDA's nutrient content labeling regulations require a number of disclosures. These mandated disclosures include, but are not limited to: ....disclosure of nutrients (fat, saturated fat, cholesterol, and sodium) present in a food at a level that FDA has concluded increases the risk of diet-related disease, required whenever a nutrient content claim is made.....In determining whether such disclosures are necessary to prevent deception, the Commission will consider several factors. First, the Commission will carefully evaluate nutrient content claims for foods that contain a nutrient at a level considered by FDA to increase the risk of a diet-related disease. ***When the context of an ad as a whole conveys to consumers the net impression that the food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease, the failure to disclose the presence of risk-increasing nutrients is likely to be deceptive***.

http://www.ftc.gov/bcp/policystmt/ad-food.shtm. (emphasis added).

Thus it is more than plausible that Frito-Lay's failure to place the required sodium disclosure on the front-of-package label is deceptive.

Plaintiffs' claim that Frito-Lay's labels are unlawful and misleading. As Frito-Lay knows, and as recognized by the FDA, even a label that is literally true may "nevertheless [be] deceptive." *People v. Wahl*, 30 Cal. App. 2d Supp. 771, 774 (Cal. App. Dep't Super Ct. 1940).

Frito-Lay's argument that its disclosure of its sodium content on the back panel cures its violations fails. California law makes clear that a company cannot cure a front-of-package violation by a statement in the nutrition panel, and this law comports with the disclosure requirements of 21 C.F.R. § 101.13 (h). *Williams*, 552 F.3d at 939-40 (holding "[the 9th Circuit] disagree[s] with the district court that reasonable consumers should be expected to look beyond the misleading representations on the front of the box to discover the truth from the ingredient list on the small print on the side of the box" and stating "***[the Ninth Circuit does] not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception***."). Otherwise, the "disclosure statement requirement" of 21 C.F.R. § 101.13 (h) would be wholly abrogated and the regulation rendered a meaningless nullity. Such was not intended and that regulation has meaning and purpose. Likewise, Frito-Lay's arguments concerning pleadings by Plaintiffs in other cases are inapposite to the question presented here and those arguments ignore the Rule 12 (b) standard. Plaintiffs' pleadings must be taken as true and they present viable claims.

Plaintiffs' claims for Frito-Lay's "FAT FREE" and "LOW FAT" statements, and reliance on those statements, are detailed and survive under California law. Frito-Lay's argument that Plaintiffs could "see that there is salt on the pretzels" is inapposite to the analysis. First, it again ignores that Plaintiffs' allegations of reliance must be taken as true. More importantly, it ignores the issue with Frito-Lay's statement. Frito-Lay's "FAT FREE" and "LOW FAT" statements are not unlawful because the product contains salt. Rather, it is the level of salt in the product that renders the statements unlawful. Viewing salt on the product is insufficient to render Plaintiffs' claims implausible. The FDA's decision and the legislature's concern over the misleading nature of the statements make the plausibility of Plaintiffs' claims clear.

Frito-Lay's final argument concerning the plausibility of Plaintiffs' "FAT FREE" and "LOW FAT" claims ignores the dictates of *Kwikset* and *Hinojos supra*, and that Plaintiffs' reliance occurred in the exact fashion of which the FDA was concerned. As Frito-Lay's label statements were proscribed by statute, they are material as a matter of law and Plaintiffs' reliance is thus reasonable as a matter of law. *Kwikset*, 51 Cal. 4th at 330-33. Further, Plaintiffs' were deceived in the exact fashion expected by the

FDA, with Plaintiffs misled into the improper "net impression that the food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease, the failure to disclose the presence of risk-increasing nutrients is likely to be deceptive." *See* FAC at ¶¶ 45-49, 80-88; *see also* http://www.ftc.gov/bcp/policystmt/ad-food.shtm, 64 F.R. 62746, 62748, 58 F.R. 2302, 2307-08, all discussed *supra*. Plaintiffs' simply were misled to believe that the products made only a healthy fit to their diet, and were misled by the failure to disclose on the front-of-package the deleterious sodium level.

Frito-Lay's label misbranding is material as a matter of law, and, hence, Plaintiffs' reliance is reasonable as a matter of law. Plaintiffs were deceived by Frito-Lay's improper "FAT FREE" and "LOW FAT" claims in the exact fashion of which the FDA was concerned, and this Court has already held—in the related *Wilson* case—that 21 C.F.R. 101.13 (h) claims are plausible and viable. *see also Ogden v. Bumble Bee Foods*, No. 5:12-cv-01828-LHK, 2014 U.S. Dist. LEXIS 565, * 32-41 (N.D. Cal. Jan. 2, 2014) (refusing to dismiss under Rule 56 a 21 C.F.R. § 101.13 (h) claim where plaintiff testified she relied on the front-of-package statement and would not have purchased the product otherwise). Frito-Lay's motion to dismiss that claim must be denied.

### ii. Plaintiffs' "All Natural" Claims are Plausible and Plaintiffs, Who Are Reasonable Consumers, were Deceived by the "All Natural" Statement.

Plaintiffs pleaded that each of Frito-Lay's five products at issue state "All Natural" despite the fact they contain unnatural, artificial and synthetic ingredients, and that Plaintiffs would not have purchased the products had they known the products were not "All Natural." (FAC at ¶¶ 27-37, 50-68 and 80-88). As with Frito-Lay's improper "FAT FREE" and "LOW FAT" statements, the improper "All Natural" label statement is material as a matter of law, and Plaintiffs' reliance on such statement thus reasonable as a matter of law. Frito-Lay's argument that Plaintiffs' reliance is implausible fails.

Plaintiffs' claims are that they relied on the "All Natural" statement, which was false because the products actually contain unnatural, synthetic and artificial ingredients. This Court—in the related *Wilson* case—already held that Plaintiffs' claims of reliance on such a "natural" statement are reasonable and viable when the products are alleged to contain unnatural ingredients. *Wilson I*, No. 3:12-cv-01586-SC, at 23:10 – 26:5. Simply, a consumer can believe a product claiming to be "All Natural" will be composed of only "natural ingredients." *Id.* at 25:10-23. Other courts in this district have held similar "natural" claims plausible and viable. *See Brazil v. Dole Food Co.*, No. 12-cv-1831-LHK, 2013 WL 1209955, *1-2, 13-14 (N.D. Cal. Mar. 25, 2013) (denying Dole's motion to dismiss plaintiff's all natural claim on plausibility grounds); *Werdebaugh v. Blue Diamond Growers*, No. 5:12-cv-2724-LHK, 2013 WL 5487236, *9-

10 and 12 (N.D. Cal. Oct. 2, 2013) (denying defendant's motion to dismiss the "all natural" claims given plaintiff's allegations that defendant's products contain artificial, synthetic and unnatural ingredients).

The Ninth Circuit in *Williams* reversed the district court's dismissal under the "reasonable consumer standard" of a claim asserting that Gerber improperly used the term "all natural" despite the allegations that it contained unnatural ingredients. *Williams*, 523 F.3d at 939. In reversing the district court's dismissal, the Ninth Circuit held that a statement that the product contains "'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false." *Id.* The Ninth Circuit thus held the statement misleading and likely to deceive, and it reversed the dismissal. *Id.* at 938-940.

The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.  The FDA considers use of the term "natural" on a food label to be truthful and not misleading when "nothing artificial or synthetic…has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 FR 2302, 2407, January 6, 1993. Any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources. Further, the FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

Frito-Lay's "All Natural" labeling practices violate FDA Compliance Policy Guide Sec. 587.100, which states: "[t]he use of the words 'food color added,' 'natural color,' or similar words containing the term 'food' or 'natural' may be erroneously interpreted to mean the color is a naturally occurring constituent in the food. Since all added colors result in an artificially colored food, we would object to the declaration of any added color as 'food' or 'natural.'"

Plaintiffs have alleged that Frito-Lay's products contain unnatural, artificial and synthetic ingredients, which preclude the use by Frito-Lay of "All Natural" claims.  Like the "all natural" claims asserted in *Williams v. Gerber*, the "All Natural" statements, as alleged by Plaintiffs, are false. Plaintiffs expected the product to contain only natural ingredients, and, as per *Williams*, that expectation was reasonable. The fact that this representation is reasonable also complies with the dictates of *Kwikset* and *Hinojos* that, since the label statement is proscribed by statute, Plaintiffs' reliance thereon is reasonable as a matter of law. *Kwikset*, 51 Cal. 4th at 326-28; *Hinojos*, 718 F.3d at 1107-08.

As noted in Plaintiffs' FAC, the FDA has made clear in its Compliance Policy Guide Sec. 587.100 and in warning letters to other food manufacturers that the "All Natural" label is unlawful where such artificial or synthetic ingredients or added colors regardless of source are present. (See Exhibits "4" through "6"). Those FDA warning letters detail that such unlawful "natural" claims render

the products "false and misleading." (*See* FAC at ¶ 66; *see also* August 29, 2001 Warning Letter to Hirzel Canning Company). Plaintiffs here were so deceived into believing the products were "All Natural" and did not contain such unnatural, synthetic or artificial ingredients, and they would not have purchased those products otherwise. (FAC 27-37, 50-68 and 80-88). That reliance is reasonable as per California law, with Plaintiffs' deceived in the exact fashion of which the FDA and California legislatures were concerned.

Frito-Lay's argument that Plaintiffs failed to allege what is false or misleading about the "All Natural" statements simply ignores Plaintiffs' detailed complaint. Plaintiffs allege that the "All Natural" statement is false and misleading because the products actually contain "artificial, synthetic and unnatural ingredients, namely 'niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium bicarbonate.'" (FAC at ¶¶ 21, 27, 37, 50-68; see also specifically 21 C.F.R. § 343 (a)(1), 21 U.S.C. § 343 (a), and 21 C.F.R. § 101.22; see also Cal. Health & Saf. Code §§ 110660 and 110740).

Frito-Lay cites the non-binding case *Chin v. General Mills Inc.*, No. 12-2150, 2013 WL 2420455 (D. Minn. May 31, 2013) to suggest that Plaintiffs have failed to plead how they were deceived by "All Natural" statements. In *General Mills*, the court dismissed Plaintiffs "All Natural" claims because the plaintiff failed to allege what they believed 100% Natural to mean.  To the extent that a case concerning Minnesota law is relevant, Plaintiffs' FAC alleges that Plaintiffs believed "All Natural" to mean exactly that, that the products were free from artificial ingredients and flavorings, artificial coloring and chemical preservatives." (FAC at ¶¶ 66-68 and at Introduction ¶¶ 1-5).

Frito-Lay's reliance on *Kane v. Chobani, Inc.*, No. 12-cv-02425-LHK, 2014 U.S. Dist. LEXIS 22258 (N.D. Cal. Feb. 20, 2014) is also misplaced. The court in that case—which involved allegations regarding sugar mislabeled on a yogurt product—dismissed the all natural claim because the allegations contended the processed fruit or juice was unnatural and the court found the allegation of fruit being unnatural implausible. *Id.* at *46. Here, however, the alleged artificial, unnatural and synthetic products are not fruit, but are—as alleged—synthetic and artificial substances that foreclose the use of the term "natural." That decision is an outlier, as indicated by Judge Koh's decision in *Blue Diamond Growers*, No. 5:12-cv-2724-LHK, 2013 WL 5487236. It was a decision specifically limited to that scenario alleging "unnatural" fruit. The *Kane* opinion is also limited by the dictates of the Ninth Circuit in *Williams* discussed *supra*.

Otherwise, Frito-Lay's arguments that the artificial and synthetic ingredients—as Frito-Lay argues—made positive contributions to Plaintiffs' diet is inapposite. Plaintiffs thought they were purchasing an "All Natural" product, but, in fact, the product contained unnatural, artificial and synthetic ingredients that proscribed that "natural" statement, and Plaintiffs would not have purchased the products otherwise. Frito-Lay's arguments that those products are "enriching," even assuming

*arguendo* they were true, are inapposite to whether they are "natural." Those products are not "natural" as per 21 C.F.R. § 101.22 and cannot be described as such. Plaintiffs expected they were purchasing an "All Natural" product, when in fact they were not.

As with the "LOW FAT" and "FAT FREE" claims, Plaintiffs properly and sufficiently pleaded their claims for Frito-Lay's "All Natural" statement. That statement is proscribed by regulation and legislation, and Plaintiffs' reliance thereon is, thus, reasonable as a matter of law. Frito-Lay's arguments for dismissal otherwise fail as fully detailed herein.

### B.    PLAINTIFFS' FAC COMPLIES WITH RULE 9(B)

Rule 9(b) requires only that allegations of fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brooks v. ComUnity Lending, Inc.*, 2010 U.S. Dist. LEXIS 67116, at *27 (N.D. Cal. Jul. 6, 2010). Rule 9(b) "must be read in harmony with (Rule) 8's requirement of a 'short and plain' statement of the claim." *Baas v. Dollar Tree Stores, Inc.*, 2007 U.S. Dist. LEXIS 65979, at *5 (N.D. Cal. Aug. 29, 2007).

Frito-Lay's brief belies any argument that Frito-Lay is unable to discern the nature of Plaintiffs' allegations. Plaintiffs here have pled the required "who, what, when, where, and how" of Defendants' alleged deception. *See, Colucci*, 2012 WL 6737800, at *7.   On allegations far less detailed than those here, this Court and others have repeatedly refused to dismiss under Rule 9(b).  *See, e.g., Williams*, 552 F.3d at 939; *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507, at *2 (N.D. Cal. April 27, 2012).

Defendants contend that Plaintiffs' FAC should be dismissed because it does not identify why the statements are false or how they were deceived. That argument wholly ignores Plaintiffs' detailed allegations, which detail: 1) that they were deceived by Defendants' failure to disclose the elevated sodium level; and 2) that Defendants labeled a product as "All Natural" despite containing the listed artificial, synthetic and unnatural ingredients. In *Conagra*, Judge Breyer rejected similar "when and where" arguments, finding and holding that "allegations that they bought the products in California since 2008 is sufficient to put Defendant on notice of the claims against it." *Jones, et al. v. Conagra Foods, Inc.*, 2012 WL 6569393, *11 (N.D. Cal. Dec. 17, 2012.), As in *Conagra* and the related *Wilson* case, Plaintiffs' allegations are sufficient to place Defendants on notice of the claims against them.

### C.  PLAINTIFFS HAVE STANDING AND SHOULD BE ALLOWED TO PURSUE CLAIMS FOR NONPURCHASED PRODUCTS

Plaintiffs have alleged in great detail how the two non-purchased products, namely the Fat Free Tiny Twists and Rods, are identically misbranded to the three products Plaintiffs purchased. The law is well-settled that in such a scenario, the best course is to allow the named main class member standing to assert a claim for those identically misbranded products. Frito-Lay's Motion to Dismiss Plaintiffs' claims

for those two non-purchased products must be denied.  Contrary to Frito-Lay's assertion that Plaintiffs "do not allege anything about the non-purchased products themselves or how the labels appear," Plaintiffs here describe in detail the manner, method and legal basis in which the Fat Free Tiny Twists and Rods are identically misbranded in the fashion of the three purchased products.

It is well-established that, "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Service*, 511 F.3d 974, 985 (9th Cir. 2007). Here, the illegal Frito-Lay conduct complained of—no sodium disclosure; improper use of "All Natural—is the same regardless of the differences in shapes of Frito-Lay's pretzels, which differences are wholly irrelevant to liability, *vel non*. Furthermore, contrary to Frito-Lay's argument, whether Plaintiffs can assert claims on behalf of a class for products they did not purchase is a matter of commonality or typicality, not standing. *Clancy v. The Bromley Tea Co.*, No. 12-cv-03003-JST, 2013 U.S. Dist. LEXIS 112722 at *10-20 (N.D. Cal. Aug. 9, 2013).[5] While some courts have addressed this matter as a standing issue, the better reasoned view is that it is not an issue of standing, but a Rule 23 issue. "Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others depends not on standing, but on an assessment of typicality and adequacy of representation." 7AA Wright et al., FEDERAL PRACTICE AND PROCEDURE (3d 2005) § 1785.1 at 388-389. "[W]hen a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class." 1 Rubenstein, NEWBERG ON CLASS ACTIONS § 2:6 (5th ed.) (explaining why certification approach is preferable to the standing approach). Thus, as one court stated:

> The Court agrees with Plaintiff that treatises and the vast majority of persuasive authority indicate that Defendants' legal argument is flawed. District courts in California routinely hold that the issue of whether a class representative "may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Greenwood v. CompuCredit Corp.*, No. 08-04878 CW, 2010 U.S. Dist. LEXIS 127719, 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010); *Arevalo v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 34151, at *12-13 (N.D. Cal. Mar. 29, 2011). Treatises and other circuits reach the same conclusion. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th 8Cir. 1998) (holding that, because plaintiff had standing to sue for injury arising from his own benefit plan, his ability to represent class members with different benefit plans should be analyzed under Rule 23, not standing); 7AA Wright et al., FEDERAL PRACTICE AND PROCEDURE (3d 2005) § 1785.1.[6]

---

[5] *Clancy* is not an outlier in ruling that this is not a standing issue. *See, e.g., Swearingen v. Yucatan Foods*, 2014 U.S. Dist LEXIS 18094 at *19-22 (following *Clancy*); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998); *Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 U.S. Dist. LEXIS 69319 at *50 (N.D. Cal. May 15, 2013); *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 6, 2010); *Trazo vs. Nestlé USA, Inc.*, No.: 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534 at *10-11(N.D. Cal. Aug. 9, 2013); *In re Frito-Lay N. Am., Inc.*, No. 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS 123824 at *42 (E.D.N.Y. Aug. 29, 2013); *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 891 (N.D. Cal. 2012); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921-22 (N.D. Cal. 2012).

[6] In the version of *Bruno* available on LEXIS, the Wright, *et al.* cite is to § 1758.1, which does not exist and would be in a different volume if it did.

1

2 *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530-31 (C.D. Cal. 2011).[7]

3       To the extent that Plaintiffs may only represent persons who purchased products are deemed at

4 the pleadings stage to be "substantially similar" to the ones Plaintiffs did purchase (what Judge Tigar

5 refers to as the "middle-ground position," *see Clancy*, 2013 U.S. Dist. LEXIS 112722 at *11-12), the other

6 products listed in the complaint are all sold by Frito-Lay and are all misbranded in the same way and in

7 violation of the same statutes and regulations. Any differences are immaterial to the claims alleged in the
FAC.

8       Plaintiffs detail that the Fat Free Tiny Twists contain a "FAT FREE" label statement despite the

9 fact that they contain more than 480 mg of sodium per 50 g of that product. That misbranding

10 statement is identical and fails the same relevant regulation that renders the three purchased products
misbranded. (FAC ¶¶ 10, 36-45).

11       Likewise, concerning the "All-Natural" claims the FAC details the fact that Tiny Twists and

12 Rods are identically misbranded in the fashion of the three purchased products. The FAC expressly

13 alleges that those two products contain the "All-Natural" claim, despite the fact that they contain "the

14 same artificial, synthetic and unnatural ingredients, namely niacin, reduced iron, thiamine mononitrate,

15 riboflavin, folic acid and ammonium bicarbonate."  Not only is the misbranding of the non-purchased

16 products identical, so are the artificial, synthetic and unnatural ingredients of the Fat Free Tiny Twists
and Rods. (FAC ¶¶ 11, 50-68).

17       While Plaintiffs recognize this Court's decision in the related case *Wilson II*, Frito-Lay's

18 reference thereto presents an inapposite argument to the facts here. Contrary to the facts of *Wilson II*,

19 wherein plaintiffs requested that a "list" of eighty-five "snack foods" be allowed within the putative

20 class, Plaintiffs here have included merely two additional products, which are misbranded in the identical

21 fashion as the Purchased Products. In fact, the only difference among the five products at issue is the
shape of the pretzels.

22       Plaintiffs described in detail how and why Frito-Lay's label misbrandings are identical to the

23 issues presented on the three purchased products. The detail of Plaintiffs' FAC here even goes so far as

24 to indicate the amount of sodium in each of the products per 50 g, rendering disingenuous Frito-Lay's

25 argument that the similarities are not sufficiently pled. In short, while Plaintiffs recognize the holding of

26 *Wilson II*, those facts are inapplicable here. Standing is not an issue at this time; any reservations Frito-

27 Lay has about Plaintiffs pursuing a putative class for the non-purchased products is better suited and
should be left for class certification.

28

---

[7] Numerous courts have followed *Brumo* in this regard. E.g., *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-cv-1142-SVW-PLA, 2013 U.S. Dist. LEXIS 82746 (C.D. Cal. June 10, 2013); *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 U.S. Dist. LEXIS 176971 at *14 (N.D. Cal. Dec. 13, 2012); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012).

### D.  PLAINTIFFS PROPERLY PLEADED FOR NATIONWIDE CLASS RELIEF

Plaintiffs, in addition to their request to represent California purchasers for Frito-Lay's violation of California and federal law, also seek to represent a nationwide class of consumers who purchased identically misbranded products that cannot legally be sold anywhere in the United States. *See* FAC ¶¶ 2-5. Frito-Lay asserts that Plaintiffs cannot bring claims for non-California purchases.

"In order to persuade a California court to apply the law of another forum, the proponent of the other forum's laws must invoke the law of the foreign jurisdiction, show that it materially differs from California law, and demonstrate how applying that law will further the interest of the foreign jurisdiction." *Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 41 (2005). "The fact that two or more states are involved does not in itself indicate there is a conflict of laws problem." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001). Absent a showing to the contrary, it is presumed that foreign law is the same as the law of the forum. *San Rafael Compania Naviera, S. A. v. American Smelting & Refining Co.*, 327 F.2d 581, 587(9th Cir. 1964); *see also In re Marriage of Moore*, 113 Cal. App. 3d 22, 26 n.1 (1980). "The party advocating the application of a foreign state's law bears the burden of identifying the conflict between that state's law and California's law on the issue, and establishing that the foreign state has an interest in having its law applied." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010). "In order to avoid the automatic application of California law to a nationwide class, defendants have the 'substantial burden' of showing that (1) a 'true conflict exists' among the laws of the various states; that (2) 'each state has an interest in applying its own law,' and (3) if each state law has an interest, which state interest will be most impaired if its law is not applied." *Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 218 (N.D. Cal. 1994). Whether a nationwide class can be certified depends on a case-specific choice-of-law analysis that the court cannot make at the motion to dismiss stage. *E.g., Bruton v. Gerber Prods. Co.*, No.: 12-CV-02412-LHK, 2014 U.S. Dist. LEXIS 5493 at *48-51 (N.D. Cal. Jan. 15, 2014) ("*Brunton II*")).[8] Frito Lay's argument for dismissal ignores the statutory mechanism in play. Here, the FDCA, by its own terms can only be adopted by states through regulations identical to the federal regulations. As such, there is not a risk that the state's laws will vary. Rather, the laws imposing liability will be identical.  No conflict of law can hence be shown.

---

[8] There are many other cases to the same effect. *E.g., Werdebaugh v. Blue Diamond Growers*, No.: 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178 at *54-57 (N.D. Cal. Oct. 2, 2013); *Brazil v. Dole Food Co.*, No.: 12-CV-01831-LHK, 2013 U.S. Dist. LEXIS 136921 at *39-42 (N.D. Cal. Sept. 23, 2013); *Clancy v. The Bromley Tea Co.*, No. 12-3003, 2013 U.S. Dist. LEXIS 112722 at *22-24 (N.D. Cal. Aug. 9, 2013);*Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013 U.S. Dist. LEXIS 54002 at *58-59 (N.D. Cal. Apr. 16, 2013); *Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d 1155, 1159-61 (C.D. Cal. 2012); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D. Cal. 2012); *see also Swearingen v. Yucatan Foods, L.P.*, No C 13-3544 RS, 2014 U.S. Dist LEXIS18094 at *9-11 (N.D. Cal. Feb. 7, 2014) (rejecting similar argument regarding "home state" exception to CAFA jurisdiction because whether plaintiffs could bring nationwide class under UCL required "'detailed choice of law analysis' not appropriate at the pleadings stage"); *Chavez v. Blue Sky Natural Bev. Co*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (certifying nationwide class against California defendant under the UCL).

### E.  PLAINTIFFS CAN SEEK INJUNCTIVE RELIEF

Plaintiffs possess standing to seek injunctive relief for their claims based on California's UCL, FAL, and CLRA. Frito-Lay argues Plaintiffs lack injunctive standing because the products no longer bear the challenged statements, and that Plaintiffs' injury of having purchased a misbranded product is not subject to "repetition." (Br. at 23:21-25:3). This argument ignores statutory standing and the teachings of *Kwikset*. In *Kwikset*, California's Supreme Court reversed the Court of Appeals decision, which had overturned the trial court's determination that the plaintiff had standing. *Kwikset*, 51 Cal.4th at  317 and 337. Kwikset, in response to the lawsuit being filed, discontinued its "Made in USA" statement and otherwise ceased its violations. *Id.* at 318. Despite defendant having ceased its violations and limiting the related threat of future harm, the trial court granted plaintiff the injunction sought and the California Supreme Court agreed that the plaintiff possessed injunctive standing. *Id.* at 318 and 336-37. The *Kwikset* court held that "[i]njunctions are 'the primary form of relief available under the UCL to protect consumers'" and one must merely have standing to sue to be entitled to injunctive relief. *Id.* at 337. Those teachings conform to the statutory text of Cal. Civ. Code § 17203, which allows one "who has suffered injury in fact and has lost money or property as a result of unfair competition" to "pursue representative claims or [injunctive] relief."

As discussed *supra*, Plaintiffs here have standing to sue. As in *Kwikset*, it is immaterial whether risks of future harm to her are limited. Following the teachings of *Kwikset*, the court in *Henderson v. Gruma Corp.*, No. CV 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) rejected the argument Frito-Lay submits here:

> If the Court were to construe Article III standing as narrowly as Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ... and would never have Article III standing ... Prevent[ing] them from bringing suit would surely thwart the objective of California's consumer protection laws. That objective is 'to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'

*Id.* at *7 (quoting *Kwikset*, 51 Cal. 4th at 320); *See also Koehler v. Litehouse, Inc.,* No. CV 12-04055, 2012 WL 6217635 (N.D. Cal. Dec.13, 2012) (plaintiff had standing to sue for injunctive relief even though he admitted that he did not intend to make another purchase of the product in question); *Ries*, 287 F.R.D. at 533 ("were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result."); *see also Ogden v. Bumble Bee Foods*, No. 5:12-cv-01828-LHK, 2014 U.S. Dist. LEXIS 565, *54-56 (N.D. Cal. Jan. 2, 2014). If this Court accepted Frito-Lay's argument it would effectively "eviscerate the intent of the California legislature in creating consumer

protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Larsen v. Trader Joe's Co.*, C-11-05188, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012). California's Supreme Court spoke on this issue in *Kwikset*, and the teachings of *Henderson*, *Koehler* and *Ries* are indicative of the propriety of that approach.

Refusing to allow a plaintiff injunctive relief would frustrate the California legislature's purpose in enacting the consumer protection statutes to provide injunctive relief. Unless injunctive relief is granted to ensure the cessation of Frito-Lay's unlawful conduct, Plaintiffs will remain at risk of inadvertently purchasing a misbranded product that they failed to realize was misbranded at the time of purchase. As such, Plaintiffs should be entitled to injunctive relief.

## VII.   ALTERNATIVE, MOTION TO AMEND

Alternatively, should the Court find any of Frito-Lay's arguments well-founded, Plaintiffs request under Rule 15 (a) that it be given leave to file an amended complaint to cure any defects.  Leave to amend should be "freely given" when the plaintiff could cure the pleading defects and present viable claims. Fed. R. Civ. P. 15 (a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). To the extent the Court deems any of the pleadings subject to dismissal, Plaintiffs have not unduly delayed any matter concerning this cause of action. Frito-Lay would not be harmed by the allowance of an amendment. Plaintiffs can present viable claims on all causes of action included in the FAC.

## VIII.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully ask that the Court deny Frito-Lay's motion.

Dated:  April 18, 2014

ROBERT FIGY and
MARY SWEARINGEN

*/s/ Gary M. Yarborough, Jr.*
Gary M. Yarborough, Jr. (*pro hac vice*)
Yarborough Law Firm, PLLC
845-B Highway 90
Bay St. Louis, MS 39520
T. (228) 467-5771
F. (228) 467-5774
E. ylf.garyyarborough@att.net

Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
T. (408) 369-0800
F.  (408) 369-0752
E. pgore@prattattorneys.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dewitt M. Lovelace
Valerie Lauro Nettles
LOVELACE LAW FIRM, P.A.
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL32550
T. (850) 837-6020
F. (850) 837-4093
E. dml@lovelacelaw.com

**Certificate of Service**

I, Gary M. Yarborough, Jr., counsel for Plaintiffs, do hereby certify that I have mailed and

emailed a true and correct copy of the above and foregoing pleading to:

Andew S. Tulumello, Esq.
Geoffrey M. Sigler, Esq.
Jason R. Meltzer, Esq.
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Ave., NW
Washington, D.C. 20036
T. (202) 955-8500
F. (202) 467-0539
atulumello@gibsondunn.com
gsigler@gibsondunn.com
jmeltzer@gibsondunn.com

Dated: April 18, 2014.

/s/ Gary M. Yarborough, Jr.
Gary M. Yarborough, Jr.

---