United States District Court
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
                                    )  Case No. 13-3988 SC
9                                   )
ROBERT FIGY  and MARY               )  ORDER GRANTING IN PART AND
10  SWEARINGEN, individually and on  )  DENYING IN PART DEFENDANT'S
behalf of all others similarly      )  MOTION TO DISMISS PLAINTIFFS'
11  situated,                        )  FIRST AMENDED COMPLAINT
                                    )
12          Plaintiffs,              )
                                    )
13      v.                          )
                                    )
14  FRITO-LAY NORTH AMERICA, INC.,  )
                                    )
15          Defendant.              )
                                    )
16  _____)

17

18  I.   **INTRODUCTION**

19       Now before the Court is Defendant Frito-Lay North America,

20  Inc.'s ("Defendant") motion to dismiss Plaintiffs Robert Figy and

21  Mary Swearingen's ("Plaintiffs") first amended complaint.  ECF Nos.

22  17 ("FAC"), 25 ("MTD").  The motion is fully briefed, ECF Nos. 31

23  ("Opp'n"),[1] 34 ("Reply"), and suitable for decision without oral

24  argument. Civ. L.R. 7-1(b).  For the reasons explained below, the

---

[1] Plaintiffs' counsel are instructed to review Civil Local Rule 3—
4(c)(2), as their font size, typeface, and line spacing do not
comply with the Rule.  See Wilson v. Frito-Lay N. Am., Inc., No.
12-1586, 2013 WL 1320468, at *1 n.1 (N.D. Cal. Apr. 1, 2013)
(raising similar issues to several of the same counsel).  The Court
may strike portions of future filings that do not adhere to the
local rules.

1    Court GRANTS in part and DENIES in part Defendant's motion.

2

3    **II.    <u>BACKGROUND</u>**

4         Defendant, a Texas corporation, makes snack food products.

5    Plaintiffs are two California consumers who purchased three of

6    Defendant's pretzel products between August 27, 2009 and the

7    present (the "Class Period").  FAC Intro. ¶ 4.[2]  Specifically,

8    Plaintiffs allege that they purchased "Frito-Lay's Rold Gold Sticks

9    Pretzels," "Frito-Lay's Rold Gold Thins Pretzels," "Frito-Lay's

10   Rold Gold Low Fat Tiny Twists Pretzels," (collectively, the

11   "Purchased Products"), and were misled by portions of their labels.

12   <u>Id.</u> ¶¶ 5-6.  Plaintiffs, on behalf of themselves and a putative

13   class, filed this action against Defendant, alleging that the

14   Purchased Products contain deceptive and misleading labeling

15   information, in violation of state and federal law.  <u>Id.</u> ¶¶ 1-6;

16   FAC ¶¶ 1-15.  Plaintiffs also bring claims on behalf of a putative

17   nationwide class of people who purchased two other products from

18   Defendant that Plaintiffs did not buy.[3]

19        Plaintiffs allege that Defendant's marketing of the Products

20   is misleading because the Products are labelled "Made with All

21   Natural Ingredients" despite containing "artificial, synthetic and

22   [2] The Court notes that the FAC contains a numbering error.  The
23   "Introduction" section begins with paragraph 1, but the following
     section, "Parties, Jurisdiction and Venue," also begins with
24   paragraph 1.  To preserve the numbering after the introductory
     section, the Court refers to introductory paragraphs herein as "FAC
25   Intro." followed by the paragraph number as it appears in the FAC.

26   [3] These products are "Frito-Lay's Rold Gold Fat Free Tiny Twists
     Pretzels," and "Frito-Lay's Rold Gold Rods Pretzels" (collectively
27   the "Non-Purchased Products").  When the Court discusses these
     alongside the Purchased Products, the Court refers to them
28   collectively as the "Products."

**United States District Court**
For the Northern District of California

unnatural ingredients 'niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium bicarbonate.'"  FAC ¶¶ 6, 27, 37, 52, 53, 57.  Further, Plaintiffs contend that the labelling of some of the products as "LOW FAT" or "FAT FREE" is false and misleading because, despite containing greater than 480 milligrams of sodium per reference amount, the Products do not bear an additional label directing consumers to see the nutritional information for sodium content as required by 21 C.F.R. Section 101.13(h)(1).  FAC ¶¶ 22-32.  Together, Plaintiffs argue that these representations convey the impression that the Defendant's "products [are] healthier than a product that does not contain [the] unlawful nutrient content claim[s]."  FAC ¶ 42.  Further, Plaintiffs state that the absence of further labelling on the "LOW FAT" and "FAT FREE" products renders them "misbranded" as a matter of federal and California law, and therefore unsalable and "legally worthless."  Id. ¶ 45.

Plaintiffs state that they care about buying healthy foods and read the label statements on the Purchased Products prior to buying them.  FAC ¶ 80, 82.  Because of their interest in purchasing healthy foods, Plaintiffs contend that they relied on the label statements and drew from them "the net impression that the Purchased Products they bought made only positive contributions to a diet, and did not contain any nutrients at levels that raised the risk of diet-related disease or health-related conditions."  FAC ¶ 83.  Plaintiffs claim they would not have bought the Products had they been properly labelled.  Id.

In the FAC, Plaintiffs assert six causes of action against Defendant: (1-3) violations of the "unlawful," "unfair," and

"fraudulent" prongs of California's Unfair Competition Law's ("UCL"), Cal. Bus. & Prof. Code § 17200, <u>et seq.</u>; (4-5) violations of the "misleading and deceptive" and "untrue" prongs of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, <u>et seq.</u>; and (6) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, <u>et seq.</u> Plaintiffs seek monetary, equitable, and injunctive relief both individually and on behalf of a putative nationwide class of consumers.

Defendant now moves to dismiss the FAC.

**III.  LEGAL STANDARD**

    **A.   Motions to Dismiss**

        **1.   Rule 12(b)(1)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject-matter jurisdiction. <u>Chandler v. State Farm Mut. Auto. Ins. Co.</u>, 598 F.3d 1115, 1121-22 (9th Cir. 2010). The party asserting jurisdiction "bears the burden of proving its existence." <u>Id.</u> at 1122. "Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." <u>Savage v. Glendale Union High Sch.</u>, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000). On a factual attack under Rule 12(b)(1),

> the moving party may submit "affidavits or any other evidence properly before the court . . . . It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1

2 <u>Colwell v. Dep't of Health & Human Servs.</u>, 558 F.3d 1112, 1121 (9th

3 Cir. 2009) (quoting <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 201

4 (9th Cir. 1989)).

5               2.  **Rule 12(b)(6)**

6      A motion to dismiss under Federal Rule of Civil Procedure

7 12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v.</u>

8 <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

9 on the lack of a cognizable legal theory or the absence of

10 sufficient facts alleged under a cognizable legal theory."

11 <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

12 1988).  "When there are well-pleaded factual allegations, a court

13 should assume their veracity and then determine whether they

14 plausibly give rise to an entitlement to relief." <u>Ashcroft v.</u>

15 <u>Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court

16 must accept as true all of the allegations contained in a complaint

17 is inapplicable to legal conclusions.  Threadbare recitals of the

18 elements of a cause of action, supported by mere conclusory

19 statements, do not suffice." <u>Id.</u> (citing <u>Bell Atl. Corp. v.</u>

20 <u>Twombly</u>, 550 U.S. 544, 555 (2007)).  The court's review is

21 generally "limited to the complaint, materials incorporated into

22 the complaint by reference, and matters of which the court may take

23 judicial notice." <u>Metzler Inv. GMBH v. Corinthian Colls., Inc.</u>,

24 540 F.3d 1049, 1061 (9th Cir. 2008) (citing <u>Tellabs, Inc. v. Makor</u>

25 <u>Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)).

26               3.  **Leave to Amend**

27      When a motion to dismiss is granted, a district court must

28 decide whether to grant leave to amend.  Generally, the Ninth

**United States District Court**
For the Northern District of California

Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  See, e.g., DeSoto v. Yellow Freight System, Inc., 957 F.2d 655, 658 (9th Cir. 1992).  However, a court does not need to grant leave to amend in cases where the court determines that permitting a plaintiff to amend would be an exercise in futility.  See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## B.  **Rule 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."  See Kearns v. Ford Motor Co., 567 F. 3d 1120, 1124 (9th Cir. 2009).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (citations omitted) (internal quotation marks omitted).

## IV.  **DISCUSSION**

Defendant argues that Plaintiffs' FAC should be dismissed for five reasons: (1) Plaintiffs lack standing as to products they do not claim to have purchased, (2) Plaintiffs lack standing to seek injunctive relief as to statements that are no longer present on Defendant's labeling and were discontinued prior to this suit being filed, (3) Plaintiffs improperly seek to apply California consumer

law to purchases made outside California against a non-California company, (4) Plaintiffs have not sufficiently pleaded reliance and injury with respect to their 'misbranding' claims, and (5), more generally, Plaintiffs have not adequately pleaded deception and reasonable reliance on Frito-Lay's labels.

### A.   The Statutory Framework

The Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. Section 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343(r), et seq., is the operative statute in this matter.

The many subsections of 21 U.S.C. § 343 establish the conditions under which food is considered "misbranded."  Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false or misleading in any particular."  Section 343(r) discusses "nutrition levels and health-related claims" about food products made anywhere on their labels.  It governs all voluntary statements about nutrition content or health information that a manufacturer includes on the food label or packaging.  The Food and Drug Administration ("FDA") has classified these nutrient claims as "express" (e.g., "100 calories"), "implied" (e.g., "high in oat bran"), and "health claims," which "characteriz[e] the relationship of any substance to a disease or health-related condition."  21 C.F.R. §§ 101.13, 101.14; see also Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1116-17 (N.D. Cal. 2010) (describing the statutory scheme).  If a food item contains a requisite level of certain ingredients, including greater than 480 milligrams of sodium per reference amount, and bears an express, implied, or health claim, then that food item must also bear a label stating:

1  "See nutrition information for [sodium] content."  21 C.F.R. §

2  101.13(h)(1).

3      Plaintiffs' state law claims are based on California's Sherman

4  Food, Drug, and Cosmetic Act ("Sherman Act"), Cal. Health & Safety

5  Code § 109875 et seq., which adopts and incorporates the FDCA.  See

6  Sherman Act § 110100 ("All food labeling regulations and any

7  amendments to those regulations adopted pursuant to the federal

8  acts in effect on January 1, 1993, or adopted on or after that date

9  shall be the food regulations of this state.").  This specifically

10  includes provisions of the FDCA and NLEA that set forth food

11  labeling and packing requirements.

12      **B.   Standing as to the Non-Purchased Products**

13      To show Article III standing, plaintiffs must allege: (1) a

14  concrete, particularized, actual or imminent injury-in-fact; (2)

15  that the injury is traceable to the defendant's action; and (3)

16  that a favorable ruling could redress the injury.  See Friends of

17  the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167,

18  180-81 (2000).  Plaintiffs in a case like this one can show Article

19  III standing by alleging that they purchased a product they

20  otherwise would not have purchased, or that they spent too much on

21  such a product, in reliance on a defendant's representations in ads

22  or on labels.  See, e.g., Brazil v. Dole Food Co., Inc., 935 F.

23  Supp. 2d 947, 961-62 (N.D. Cal. 2013).  It is Plaintiffs' burden to

24  show standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561

25  (1992).  The parties agree that Plaintiffs have pleaded standing as

26  to the Purchased Products.  However, Defendant argues that

27  Plaintiffs lack standing as to the Non-Purchased Products.

28      Courts in this district have adopted three diverging

**United States District Court**
For the Northern District of California

approaches for analyzing standing to pursue claims for non-purchased products. See Clancy v. The Bromley Tea Co., No. 12-cv-03003-JST, 2013 WL 4081632, at *4 (N.D. Cal. Aug. 9, 2013). The first approach holds that "[w]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing." Id. (citing Granfield v. NVIDIA Corp., C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) and collecting other cases); see also MTD at 21 (collecting cases). Other courts have adopted a "middle-ground" position, holding that sufficient or substantial similarity between the purchased and non-purchased products satisfies the standing requirement for the non-purchased products. See Astiana v. Dreyer's Grand Ice Cream, Inc., No. 11-cv-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012); see also Anderson v. Jamba Juice Co., 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012); cf. Stephenson v. Neutrogena, No. 12-cv-00426 PJH, 2012 WL 8527784, at *1 (N.D. Cal. July 27, 2012) (assessing whether "an individualized factual inquiry [would be] needed for each product" that the named plaintiff did not purchase). Finally, some courts have concluded that so long as a named plaintiff has individual standing to sue for the products they did purchase, any inquiry into products they did not purchase is best left for the class certification stage. See, e.g., Kosta v. Del Monte Corp., No. 12-CV-01722-YGR, 2013 WL 2147413, at *15 (N.D. Cal. May 15, 2013); Koh v. S.C. Johnson & Son, Inc., C-09-00927 RMW, 2010 WL 94265, at *3 (N.D. Cal Jan. 6, 2010).

    Defendant urges the Court to adopt the first position, and to

**United States District Court**
For the Northern District of California

1    hold that because Plaintiffs concede they never bought the Non-
2    Purchased Products, they therefore lack standing to pursue claims
3    for the alleged mislabeling of those products.  MTD at 20-21.
4    Plaintiffs, on the other hand, argue the Court should adopt the
5    third position and leave these questions for class certification.
6    Opp'n at 19-20.  The Court disagrees with both parties' views and
7    instead, as in the related case Wilson v. Frito-Lay North America,
8    Inc., 961 F. Supp. 2d 1134, 1141-42 (N.D. Cal. 2013) and several
9    other analogous cases, adopts the "substantial similarity" test.
10   See also Parker v. J.M. Smucker Co., No. C 13-0690 SC, 2013 WL
11   4516156, at *3 (N.D. Cal. Aug. 23, 2013) (applying the "substantial
12   similarity" approach); Colucci v. ZonePerfect Nutrition Co., No.
13   12-2907 SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012)
14   (same).  In applying the "substantial similarity" test, Courts look
15   to a series of factors including whether the challenged products
16   are of the same kind, comprised of largely the same ingredients,
17   and whether each of the challenged products bears the same alleged
18   mislabeling.  See Astiana, at *13.

19        Anticipating the Court's application of the substantial
20   similarity test, Defendant argues, relying on Wilson, that
21   Plaintiffs have failed to show sufficient similarity between the
22   Purchased and Non-Purchase Products.  MTD at 20-23.  Defendant
23   contends that Plaintiffs have only conclusively pleaded similarity,
24   and argue that any similarities sufficiently pleaded are, as in a
25   series of other cases in this District, merely superficial.  See
26   Kane v. Chobani, Inc., 12-CV-02425-LHK, 2013 WL 5289253, at *11
27   (N.D. Cal. Sept. 19, 2013) (dismissing for failure to allege that
28   the purchased and non-purchased products were substantially

**United States District Court**
For the Northern District of California

1  similar); <u>Khasin v. R.C. Bigelow, Inc.</u>, No. C 12-02204 JSW, 2013 WL

2  2403579, at *4 (N.D. Cal. May 31, 2013) (finding insufficient

3  similarity where font, label size, and presentation of alleged

4  misrepresentations differed); <u>Miller v. Ghirardelli Chocolate Co.</u>,

5  912 F. Supp. 2d 861, 870-71 (N.D. Cal. 2012) (concluding that

6  products' appearance, labeling, and marketing were too dissimilar).

7      Plaintiffs oppose these arguments, contending that unlike in

8  <u>Wilson</u>, where Plaintiffs sought to include 85 allegedly similar

9  snack foods, many with subtle but significant differences in

10  packaging, labelling, and marketing, here Plaintiffs only seek to

11  include two additional pretzel products which are "misbranded in

12  the identical fashion as the Purchased Products." Opp'n at 20.

13  Furthermore, they point to the allegations in their complaint

14  articulating the similarities between the Products in labelling,

15  ingredients, and level of sodium. <u>Id.</u> (citing FAC ¶¶ 10-11, 36-45,

16  50-68). In short, Plaintiffs argue that "the only difference among

17  the five products at issue is the shape of the pretzels." <u>Id.</u>

18      Plaintiffs are right. Here, each of the factors courts

19  generally consider in deciding whether products are substantially

20  similar are satisfied. <u>See</u> <u>Colucci</u>, 2012 WL 6737800, at *4

21  (finding sufficient similarity because the challenged products were

22  "of a single kind, . . . nutrition bars," contained at least six of

23  the nine challenged ingredients, and bore the same challenged

24  label). First, unlike the 85 snack products at issue in <u>Wilson</u>,

25  which were substantially similar only in that they were all "potato

26  chips, corn chips, and puffed corn products . . . ," 961 F. Supp.

27  2d at 1141, the Purchased and Non-Purchased Products are all

28  pretzels, distinct in their shape but not in any other relevant

characteristic.  Second, they contain the same list of allegedly
"artificial, synthetic and unnatural ingredients" present in the
Purchased Products, and allegedly have the same impermissibly high
levels of sodium.  FAC ¶¶ 9, 57.  Third, Plaintiffs plead that the
mislabeling of the Non-Purchased Products is not just similar, but
identical to the Purchased Products. Id. ¶¶ 52-53.  Both the Non-
Purchased Products and the Purchased Products state they are "Made
with All Natural Ingredients," and the non-purchased "Fat Free Tiny
Twists" share the "Fat Free" labelling with the purchased "Rold
Gold Sticks Pretzels."  See id. ¶¶ 9-10.

As a result, Plaintiffs have adequately pleaded substantial
similarity.  Accordingly, Defendant's motion to dismiss for lack of
standing to challenge the Non-Purchased Products is DENIED.

### C.   **Standing to Seek Injunctive Relief**

Defendant also raises a second challenge to Plaintiffs'
standing, arguing that Plaintiffs' claims for injunctive relief are
not justiciable because Defendant discontinued use of all
challenged labelling practices prior to the time Plaintiffs filed
this lawsuit.  MTD at 23-25; ECF No. 26 ("Brennan Decl.") ¶¶ 4-5.
Defendant has furnished two declarations showing the current
labelling for the Products and specifically stating that the
allegedly offending labels were no longer being printed when
Plaintiffs filed their complaint.  Brennan Decl. ¶¶ 4-5, Exs. 1-10
(depicting the current packaging for each of the challenged
Products); see also ECF No. 27 ("Maleck Decl."), Exs. A-B (showing
the current packaging for two of the Products).  The Court may
consider these declarations on Defendant's motion because Defendant
appears to be bringing a factual attack on the Court's jurisdiction

1   under Rule 12(b)(1).  MTD at 24 n.13; see Savage, 343 F.3d at 1039

2   n.2.  Plaintiffs rest on the allegations in their complaint.  Opp'n

3   at 22-23.

4        To demonstrate Article III standing to seek injunctive relief,

5   Plaintiffs must demonstrate a "real and immediate threat of

6   repeated injury."  City of Los Angeles v. Lyons, 461 U.S. 95, 103

7   (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)).

8   "Past exposure to illegal conduct does not in itself show a present

9   case or controversy regarding injunctive relief if unaccompanied by

10  any continuing present adverse effects."  Id. (internal alterations

11  omitted).  Defendant argues that because none of the Products were

12  being printed with the challenged labeling at the time the case was

13  filed, Plaintiffs cannot show "a sufficient likelihood that he will

14  again be wronged in a similar way" by the alleged mislabeling.  MTD

15  at 24 (citing Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985

16  (9th Cir. 2007) (internal quotation marks omitted)).

17       Unfortunately the parties failed to appreciate the

18  significance of Plaintiffs' failure to respond to Defendant's

19  factual attack with affirmative evidence in favor of jurisdiction.

20  Because Plaintiffs bear the burden of demonstrating the existence

21  of jurisdiction, at first blush this would seem to resolve the

22  issue in Defendant's favor.  However the Court still needs to

23  confront two seemingly contradictory Ninth Circuit precedents

24  addressing the allocations of the burdens on jurisdiction in a

25  facial challenge under Rule 12(b)(1).  Generally speaking, in a

26  factual attack under Rule 12(b)(1), "the moving party may submit

27  affidavits or any other evidence properly before the court . . . ."

28  Colwell, 558 F.3d at 1121 (internal quotation marks omitted).  Once

United States District Court
For the Northern District of California

extrinsic evidence is introduced, "it then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." Id. (quoting St. Clair, 880 F.2d at 201).  However, another Ninth Circuit opinion suggests that (without analyzing the issue), where the Court does not hold an evidentiary hearing on jurisdiction (as here), the Court "accept[s] as true the factual allegations in the complaint," including those regarding jurisdiction. McLachlan v. Bell, 261 F.3d 908, 909 (9th Cir. 2001) (citation omitted).[4]  These two statements seem, at least to the Court, irreconcilably at odds. After all, a literal reading of McLachlan would require the Court to hold an evidentiary hearing in order to grant any factual motion to dismiss for lack of subject-matter jurisdiction.  Other courts have rejected this interpretation, although not in precisely the same posture.  See Robertson v. Qadri, No. C 06-04624 JF, 2008 WL 818529, at *4 n.4 (N.D. Cal. Mar. 25, 2008).

     The Court is persuaded that the Ninth Circuit did not intend to adopt such a rule.  Instead the Court believes Colwell correctly states the burdens on a factual challenge to jurisdiction under Rule 12(b)(1).  By submitting declarations and extrinsic evidence

---

[4] The case the McLachlan court cited in support of this proposition, GATX/Airlog Co. v. United States, 234 F.3d 1089, 1093 (9th Cir. 2000), superseded, 286 F.3d 1168, is puzzling.  In that case, the Ninth Circuit affirmed a dismissal for lack of subject-matter jurisdiction under the Federal Tort Claims Act's discretionary function exception.  The dismissal below revolved around the Federal Aviation Administration's issuance of a directive modifying the terms of two design certificates for converting passenger airplanes into cargo planes.  Id. at 1091.  In affirming the dismissal, the Ninth Circuit did not discuss the allocation of burdens under Rule 12(b)(1), nor is it even clear from the face of the opinion that the challenge to jurisdiction went beyond the scope of the pleadings.

United States District Court
For the Northern District of California

of Plaintiffs' lack of standing to seek injunctive relief,
Defendant triggered Plaintiff's obligation to "present affidavits
or any other evidence necessary to satisfy its burden of
establishing that the court, in fact, possesses subject matter
jurisdiction." 558 F.3d at 1121 (quotation omitted). Because
Plaintiffs have failed to offer any affirmative evidence to satisfy
the Court that it has subject-matter jurisdiction over Plaintiffs'
claims for injunctive relief, Plaintiffs allegations are DISMISSED.
Nevertheless, the Court is not persuaded that amendment would be
futile and accordingly grants Plaintiffs leave to amend. If
Plaintiffs can make factual allegations showing some continued
threat of harm or that Defendant ceased their offending labeling in
response to this litigation or the threat of this litigation, they
may be able to satisfy the requirements of Article III. See, e.g.,
Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109 (1998)
(discussing the "presumption of future injury when the defendant
has voluntarily ceased its illegal activity in response to
litigation . . . ") (quoting source) (alterations omitted).[5]

---

[5] The Court notes that while the Defendant has, in the most general
sense, "voluntarily ceased" the conduct at issue in the litigation,
the presumption does not apply at least to the allegations as they
stand now. Although the doctrines are related, this presumption
only applies in the context of a challenge for mootness. See Steel
Co., 523 U.S. at 109; see also Laidlaw, 528 U.S. at 170 ("For
example, a defendant claiming that its voluntary compliance moots a
case bears a formidable burden. By contrast, it is the plaintiff's
burden, in a lawsuit brought to force compliance, to establish
standing by demonstrating that, if unchecked by the litigation, the
defendant's allegedly wrongful behavior will likely occur or
continue and that the threatened injury is certainly impending.")
It would therefore be "an immense and unacceptable stretch to call
the presumption into service as a substitute for the allegation of
present or threatened injury upon which initial standing must be
based." Steel Co., 523 U.S. at 109 (citing Lyons, 461 U.S. at 108-
09). Because there is no indication in Plaintiffs' complaint or
elsewhere in the factual record that Defendant's cessation was in

1    Nonetheless, while Plaintiffs' Complaint is not a model of

2    clarity on this point, the Court finds that their injunctive claims

3    are left undisturbed to the extent they are based on the allegation

4    that Defendant continues to sell an existing stock of the allegedly

5    mislabeled products.  While Defendant's motion is presented as a

6    challenge to Plaintiffs' standing to seek <u>any</u> injunctive relief,

7    their supporting declarations only state that they are no longer

8    "printing the phrase[s]," Brennan Decl. ¶¶ 4-5, on their labels.

9    While this may ultimately prove to be a distinction without a

10   difference if all remaining inventory of the Products have already

11   been sold, Plaintiffs have pleaded that sales of the mislabeled

12   Products continue to the present.  Without some affirmative

13   evidence showing Plaintiffs cannot demonstrate a likelihood of

14   future injury from continued sales of an existing stock of

15   allegedly mislabeled pretzels, the Court must presume the truth of

16   Plaintiffs' allegations.  Accordingly, to the extent Defendant

17   seeks dismissal of Plaintiffs' claims for an injunction barring the

18   continued sale of the Products, the motion is DENIED.

19       **D. <u>Claims for Non-California Purchases</u>**

20   Defendant challenges Plaintiffs' claims on behalf of non-

21   California residents.  Defendant argues that, as in this Court's

22   previous orders in <u>Wilson</u>, Plaintiffs' class claims should be

23   dismissed because "non-California residents' claims are not

24   supported where none of the alleged misconduct or injuries occurred

25   in California."  MTD at 23 (quoting <u>Wilson</u>, 961 F. Supp. 2d at

26   1147).  Plaintiffs respond that this inquiry is best saved for the

27

28   any way a response to the litigation, the Court cannot apply the
     presumption now.

1   class certification stage.  Opp'n at 21.

2        Defendant is right.  As this Court held in Wilson, the

3   ordinary presumption against extraterritorial application of

4   California law applies to UCL, CLRA, and FAL claims, and such

5   claims "are not supported where none of the alleged misconduct or

6   injuries occurred in California."  961 F. Supp. 2d at 1147 (quoting

7   Churchill Village, LLC v. Gen. Elec. Co., 169 F. Supp. 2d 1119,

8   1126 (N.D. Cal. 2000)) (citing Sullivan v. Oracle Corp., 51 Cal.

9   4th 1191, 1207, 127 Cal. Rptr. 3d 185, 254 P.3d 237 (Cal. 2011)).

10  In this case, just as in Wilson, "Plaintiffs are located in

11  California, Defendant is located in Texas, and Plaintiffs have not

12  alleged any activity within California except their own purchase of

13  the Purchased Products."  Id.  Because Plaintiffs mistakenly

14  conflate Defendant's argument with the choice of law inquiry often

15  required at the class certification stage, and simply retread the

16  argument this Court directly rejected in Wilson, the Court will not

17  repeat its prior order. 961 F. Supp. 2d at 1147-48.

18       Nevertheless, unlike the Plaintiffs in Wilson, Plaintiffs here

19  have not pleaded an alternative California-specific subclass.  MTD

20  at 23 n.12.  As a result, all of Plaintiffs' class claims must be

21  DISMISSED.  Furthermore, because the Court finds that amendment

22  would be futile with respect to claims under the UCL, CLRA, and FAL

23  by non-California residents for purchases made outside California,

24  these claims are DISMISSED WITH PREJUDICE.  Plaintiffs' remaining

25  class claims are DISMISSED WITHOUT PREJUDICE.  To the extent

26  Plaintiffs seek to assert claims on behalf of a class limited to

27

28

**United States District Court**
For the Northern District of California

17

United States District Court
For the Northern District of California

1  California, the Court grants Plaintiffs leave to amend.[6]

2      **E.  Plaintiffs' Substantive Claims**

3      Turning now to the substance of Plaintiffs' claims, Defendant

4  claims the FAC is deficient in two additional respects.  First,

5  Defendant argues that each of Plaintiffs' six causes of action are

6  based on a repackaging of the "misbranding" theory that this Court

7  previously rejected in Wilson.  Second, Defendant contends that

8  Plaintiffs have not sufficiently pleaded deception and injury as a

9  result of Frito-Lay's labels.  The Court will address each in turn.

10      **1.  Plaintiffs' Reprised Mislabeling Theory**

11      First, Defendant contends that each of Plaintiffs' six causes

12  of action are insufficient insofar as they are they are based on a

13  revised version of the "misbranding" theory the Court rejected in

14  Wilson.  MTD at 7 (citing FAC ¶¶ 107, 115-17, 123, 125, 133, 141,

15  152).  Plaintiffs' view is that because the Products' "All

16  Natural," "FAT FREE," and "LOW FAT" labelling violates state and

17  federal law, California law deems the Products 'misbranded,' and

18  therefore they "cannot be legally sold or possessed, have no

19  economic value and are legally worthless."  FAC ¶¶ 2; see also id.

20  ¶¶ 45, 68.  Defendant argues that "in asserting this theory,

21  Plaintiffs do not allege that they relied on any of the challenged

22  labeling statements in buying the products, just that they relied

---

23  [6] The Court agrees with Defendant that Plaintiffs' "Alternative,

24  Motion to Amend" on the final page of their Opposition is
   procedurally improper and is accordingly DENIED.  See Phleger v.

25  Countrywide Home Loans, Inc., No. C 07-1686 SBA, 2008 WL 65677, at
   *5 (N.D. Cal. Jan 4, 2008); Civ. L.R. 7-1, 7-2.  Nonetheless the

26  court is mindful of the Ninth Circuit's directive that "leave to
   amend should be granted unless the court determines that the

27  allegation of other facts consistent with the challenged pleading
   could not possibly cure the deficiency." DeSoto, 957 F.2d at 658

28  (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806
   F.2d 1393, 1401 (9th Cir. 1986)).

United States District Court
For the Northern District of California

1  on the supposed 'misrepresentation that the products were salable,

2  capable of possession and not misbranded.'"   MTD at 7 (citing FAC ¶

3  107).

4       Plaintiffs' counterargument is twofold.  First, Plaintiffs

5  contend, reprising the argument in Wilson, that reliance is not an

6  element of their cause of action under the UCL's unlawful prong.

7  Opp'n at 7-8.  Second, Plaintiffs argue that even if reliance is

8  required, California law supplies a presumption of reliance which

9  they have adequately pleaded.  Opp'n at 8-9.  This presumption of

10 reliance, they argue, stems from the California Supreme Court's

11 pronouncement in In re Tobacco II Cases, 46 Cal. 4th 298, 327 (Cal.

12 2010) that a "presumption, or at least an inference, of reliance

13 arises whenever there is a showing that a misrepresentation was

14 material."  Because the form of the "FAT FREE," "LOW FAT," and

15 "Made with All Natural Ingredients" statements during the Class

16 Period were allegedly proscribed by statute or regulation, they are

17 material as a matter of law.  See Opp'n at 8 (citing 21 C.F.R. §§

18 101.13(h)(1), 101.22; Fed. Reg. 2301, 2407 (Jan. 6, 1993); Cal.

19 Health & Safety Code § 110740; Kwikset Corp. v. Super. Ct., 51 Cal.

20 4th 310, 333 (Cal. 2011)).  Accordingly Plaintiffs argue the Court

21 should presume reliance.

22      As to the first argument, the Court reiterates its prior

23 holding in Wilson.  A UCL plaintiff must plead reliance even for a

24 claim under the UCL's unlawfulness prong.  See Wilson, 961 F. Supp.

25 2d at 1144; see also Figy v. Amy's Kitchen, No. CV 13-03816 SI,

26 2013 WL 6169503, at *3 (N.D. Cal. Nov. 25, 2013).  While Plaintiffs

27 disagree with the Court's prior ruling, absent binding authority

28 from the Ninth Circuit or some other reason for reconsideration,

United States District Court

For the Northern District of California

1   the Court will not revisit the issue.  Opp'n at 8 n.1.

2        Plaintiffs' second argument fares no better.  First, as

3   Defendant points out, the cases cited by Plaintiffs, Kwikset,

4   Hinojos v. Kohl's Corp., 718 F.3d 1098 (9th Cir. 2008), and Tobacco

5   II, do not support the existence of such a presumption.  Rather,

6   these cases required named plaintiffs to plead actual reliance on

7   the misrepresentations at issue.  See Hinojos, 718 F.3d at 1109

8   (restating the elements laid out in Kwikset, including the

9   requirement that a customer plead they "purchased the product in

10  reliance on the misrepresentation . . .") (emphasis added);

11  Kwikset, 51 Cal. 4th at 327 ("[P]laintiffs need only allege

12  economic injury arising from reliance on Kwikset's

13  misrepresentations.") (emphasis added); Tobacco II, 46 Cal. 4th at

14  328 ("[A] plaintiff must plead and prove actual reliance to satisfy

15  the standing requirement of section 17204 . . . .") (emphasis

16  added).  Second, Plaintiffs' mislabeling theory cannot satisfy this

17  requirement.  Instead, rather than allege reliance on an alleged

18  misrepresentation as required by the UCL, at best Plaintiffs

19  misbranding theory only alleges reliance on the "salability" of the

20  products.  This is insufficient, as the statute requires reliance

21  on the allegedly injury-causing practice.  See Kwikset, 51 Cal. 4th

22  at 327 ("[P]laintiffs need only allege economic injury arising from

23  reliance on Kwikset's misrepresentations.") (emphasis added).

24  Here, the practices that allegedly injured Plaintiffs are the "All

25  Natural," "FAT FREE," and "LOW FAT" labels -- not some implicit

26  representation of salability.  Finally, extending the UCL to

27  encompass this type of theory would expand liability to reach any

28  violation of the underlying regulations -- even if no consumer

United States District Court
For the Northern District of California

1  relied on the statements that violate those regulations.  This is

2  because, in Plaintiffs' view, consumers always rely on the

3  salability of the products they purchase.  This is precisely the

4  type of reasoning the Court rejected in <u>Wilson</u> when it stated that

5  a "mere alleged violation of the underlying regulations" is

6  insufficient to state a claim under the UCL.  961 F. Supp. 2d at

7  1144.

8       Accordingly, Plaintiffs' misbranding theory is DISMISSED.

9  Furthermore, given the Court's previous rejection of a virtually

10 identical theory in <u>Wilson</u>, the Court finds amending the

11 misbranding theory would be futile.  Therefore, the dismissal is

12 WITH PREJUDICE.  Nonetheless, Plaintiffs may amend to include

13 alternate theories of reliance.

14           **2.   <u>Plaintiffs' Allegations of Deception and Injury</u>**

15      The balance of Defendant's motion argues that Plaintiffs have

16 failed to adequately allege deception as to each of the two alleged

17 types of misrepresentations.  Specifically, Plaintiffs claim that

18 they were injured by the alleged mislabeling because they care

19 about buying healthy foods and read the label statements on the

20 Purchased Products prior to buying them.  FAC ¶ 80, 82.  Because of

21 their interest in purchasing healthy foods, Plaintiffs contend that

22 they relied on the label statements and drew from them "the net

23 impression that the Products made only positive contributions to a

24 diet, and did not contain any nutrients at levels that raised the

25 risk of diet-related disease or health-related conditions."  FAC ¶

26 83.  Plaintiffs claim they would not have bought Defendant's

27 products absent these statements on the labels of the Purchased

28 Products.  <u>Id.</u>

United States District Court
For the Northern District of California

In order to show deception, Plaintiffs must plausibly plead that (1) they relied on the packaging and were deceived, and (2) a reasonable consumer would "likely . . . be deceived." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008); Trazo v. Nestle USA, Inc., 5:12-CV-2272 PSG, 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013).  As the Ninth Circuit noted in Williams, deception is usually a question of fact, 552 F.3d at 938-39, however in certain cases deception can be resolved on a motion to dismiss.  See, e.g., Ang v. Whitewave Foods Co., No. 13-CV-1953 SC, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013) (dismissing UCL, FAL, and CLRA claims for lack of plausibility where plaintiffs pleaded deception on the theory that consumers might confuse soy milk or almond milk for dairy milk).

The Court will address the adequacy of Plaintiffs' "All Natural" and fat-related allegations in turn.

a.   Plaintiffs' 'All Natural' Claims

As explained, supra, Plaintiffs allege that the "Made with All Natural Ingredients" labeling on the Products is false and misleading because the Products contain "artificial, synthetic and unnatural ingredients 'niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid and ammonium bicarbonate.'"  FAC ¶¶ 6, 27, 37, 52, 53, 57.  Defendant argues that Plaintiffs have failed to plead "'a plausible objective definition of the term 'All Natural' or that [their] subjective definition of the term 'All Natural' is one that is shared by the reasonable consumer.'"  MTD at 16 (quoting Pelayo v. Nestle USA, Inc., No. CV 13-5213-JFW AJWX, 2013 WL 5764644, at *4-5 (C.D. Cal. Oct. 25, 2013) (alterations omitted)).  Relying on cases such as Kane v. Chobani, Inc., 973 F.

1   Supp. 2d 1120, 1138 (N.D. Cal. Feb. 20, 2014), which require

2   Plaintiffs to plead what they believe "All Natural" to mean, what

3   the offending ingredients are, and what is unnatural about them,

4   Defendant contends the FAC is insufficient.  See also Chin v.

5   General Mills, No. 12-2150 (MJD/TNL), 2013 WL 2420455, at *9 (D.

6   Minn. June 3, 2013) (dismissing "100% Natural" and "Natural" claims

7   where plaintiffs pleaded only that they contain "highly processed

8   and non-natural sugar substitutes" and other ingredients, without

9   specifying how they were deceived or what they believed the labels

10  to mean).

11       Defendant is right.  Unlike in Wilson, where claims based on

12  the same "Made with All Natural Ingredients" label survived a

13  motion to dismiss, here Plaintiffs' FAC provides no detail

14  whatsoever about how or why the offending ingredients are

15  unnatural.  Compare Wilson, No. 3:12-cv-01586-SC, ECF No. 18

16  ("Wilson FAC") at ¶ 45 (naming allegedly unnatural ingredients and

17  explaining why they are unnatural), with FAC ¶¶ 50-68 (repeatedly

18  asserting, without any specificity or explanation, that the

19  allegedly unnatural ingredients are "artificial, synthetic and

20  unnatural . . .").  While Plaintiffs dedicate much of their

21  briefing to arguing that they interpreted the word "natural" to

22  mean that the product is composed of "only natural ingredients,"

23  Opp'n at 15 (internal quotation marks omitted), they still have

24  offered nothing more than conclusory assertions that the

25  ingredients they complain of are unnatural.  It is insufficient

26  under Rule 9(b) to simply assert, no matter how foreign or

27  synthetic-sounding an ingredient's name might be, that an

28  ingredient is unnatural.  Rather, Plaintiffs must plead why these

allegedly offending ingredients are unnatural.  Kane, 973 F. Supp.
2d at 1138.  Because Plaintiffs have not pleaded any facts
explaining what these ingredients are and how they are unnatural,
Plaintiffs' "All Natural" claims do not meet the standard set forth
in Federal Rule of Civil Procedure 9(b).  Accordingly, these claims
are DISMISSED.  Plaintiffs may amend their claims to include
allegations about how and why the offending ingredients are
unnatural.

b.   Plaintiffs' 'LOW FAT' and 'FAT FREE'
Allegations

Second, Defendant argues that Plaintiffs' allegations of
deception and injury by the fat-related statements are implausible
and therefore merit dismissal.  Specifically, Defendant offers four
reasons why Plaintiffs' allegations of deception and injury as to
the fat-related statements are insufficient and implausible.
First, Defendant notes that in light of Plaintiffs' professed
interest in the nutritional content of food, it is implausible that
"they would have relied on a labeling statement about fat to form
an expectation about the pretzels' level of sodium – particularly
since the exact sodium levels were fully and accurately disclosed
on the pretzels' nutrition facts panel."  MTD at 11.  Second,
Defendant notes Plaintiffs' allegations in other cases that they
scrutinized the back panels of other food products and argues that
this renders implausible the suggestion they did not read the back
panel here (where the true level of sodium was displayed).[7]  Third,

---

[7] In support of this argument Defendant asks the Court to take
judicial notice of complaints filed by the same named plaintiffs in
other cases in this district alleging that they scrutinized the
back labels of a veritable grocery cart full of other food
products. ECF No. 28 ("Def. RJN").  Nonetheless, the request is

United States District Court
For the Northern District of California

1  Defendant argues that Plaintiffs and reasonable consumers could not

2  be deceived about the Products' sodium levels because the see-

3  through windows or depictions of pretzels on the Products'

4  packaging show visible salt crystals.  Finally, Defendant argues

5  that, contrary to the FDA's guidance, Plaintiffs erroneously

6  conclude that because the pretzels lack the sodium disclosure they

7  are "inherently unhealthy" and contain "unhealthy sodium levels."

8  See FAC ¶¶ 6, 38, 43.

9      Defendant is right.  As with the misbranding claims discussed

10 earlier, deception claims must be predicated on more than simple

11 regulatory violations.  Trazo, 2013 WL 4083218, at *10.  Yet all

12 Plaintiffs can show here is the existence of a regulatory

13 violation.  It is utterly implausible that Plaintiffs or reasonable

14 consumers would see an undisputedly true statement about fat and

15 then draw conclusions about other totally unrelated nutritional

16 characteristics like sodium content or conclude the Products "made

17 only positive contributions to a diet . . . ."  FAC ¶ 82.  In this

18 way, this claim resembles one the undersigned rejected in Lam v.

19 General Mills, Inc., 859 F. Supp. 2d 1097, 1103-04 (N.D. Cal.

20 2012).  In Lam, the Court found that an objectively true statement

21 like "gluten free" on a pack of fruit snacks was unlikely to

22 deceive a reasonable consumer into believing the product also

23 "contains no partially hydrogenated oils, low amounts of sugar or

24

25 DENIED as irrelevant.  At the pleading stage, where credibility is
   not in issue, the fact that Plaintiffs scrutinized labels in other
26 cases (without pleading they had any habit or practice of doing so
   generally) is irrelevant to the issues before the Court.  Fed. R.
27 Evid. 401(a).  Plaintiffs make a request for judicial notice of
   their own providing images of several of the allegedly offending
28 labels as well as FDA warning letters.  ECF No. 32 ("Pls.' RJN").
   The request is GRANTED.  Fed. R. Evid. 201(b).

United States District Court
For the Northern District of California

corn-syrup, or that the [products] are otherwise healthful." <u>Id.</u>
at 1104.  Similarly here, it is implausible that a reasonable
consumer would interpret an objectively true statement like "FAT
FREE" as also communicating that the product contains low amounts
of sodium or is otherwise healthful.

Accordingly these claims are DISMISSED with leave to amend.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

**V.   CONCLUSION**

For the reasons explained above, Defendant Frito-Lay North America, Inc.'s motion to dismiss Plaintiffs Robert Figy and Mary Swearingen's first amended complaint is GRANTED in part and DENIED in part.   The Court orders as follows:

- Defendant's motion to dismiss claims based on the Non-Purchased Products is DENIED.
- Plaintiffs' claims for injunctive relief are DISMISSED with leave to amend except as to claims seeking to enjoin sales of allegedly mislabeled Products, which survive.
- Plaintiffs' claims based on purchases that occurred outside California are DISMISSED WITH PREJUDICE.
- Plaintiffs' misbranding theory is DISMISSED WITH PREJUDICE.
- Plaintiffs' claims based on the "LOW FAT" and "FAT FREE" representations are DISMISSED with leave to amend.
- Plaintiffs' claims based on the "Made with All Natural Ingredients" representation is DISMISSED with leave to amend.

IT IS SO ORDERED.

Dated: August 12, 2014

_____

UNITED STATES DISTRICT JUDGE